WENTWORTH, Judge.
The employer and carrier seek review of the deputy commissioner’s determination of claimant’s average weekly wage. Because of ambiguity in the order and our concomitant inability to determine whether the deputy’s calculation of the average weekly wage was permissible, we remand this case with instructions.
The claimant started working regularly for the employer in 1977, and after 1980 he worked primarily as an over-the-road driv *999 er, making deliveries for the employer. Claimant’s pay was $4.00 an hour, and when he was on the road, out of town, he was paid $35 per day “expense money.” The expense money was a set rate and claimant could spend it as he saw fit. He received such payments until February, 1982. On April 23, 1982, an explosion and fire at the manufacturing plant caused a shut down of operations and lay-off of all employees. Claimant returned to work for employer on June 17, 1982. The owner of Industrial Fiberglass Manufacturers testified that business was normally slower during the summer than during the winter, and that when the company reopened in June of 1982 work was not as fast as it had been prior to the fire but business was gradually picking up.
On July 21, 1982, claimant was injured in a compensable accident at work. He reached maximum medical improvement on January 24, 1983, with a seven and a half percent permanent partial impairment. The only controversy between the parties is the amount of claimant’s average weekly wage. Originally, the employer/carrier paid benefits upon a calculation of claimant’s average weekly wage by averaging the last preceding 13 weeks during which he had worked before the accident, although those 13 weeks were not consecutive and therefore extended over a total period of more than 13 weeks. This resulted in an average weekly wage of $191.26.
Claimant contended that the expense money should have been included in the calculation of the amount of his wages.[1] The employer/carrier contested the inclusion of the expense money and the claim was set for hearing. At the hearing[2] the employer/carrier contended, as they do here, that their initial average weekly wage calculation had been wrong and that the proper figure was $160.00.
The deputy found that the original average weekly wage utilized by the employer/carrier was the proper base pay and added an amount to reflect the expense money. This resulted in an average weekly wage of $230.21.[3]
The employer/carrier argue that it was improper to include any amount for the expense money because claimant had not received the allowance for the thirteen weeks prior to the accident. Appellants contend that under § 440.14(l)(d), claimant’s average weekly wage must be based on his full-time wages at the time of the accident. Under Penuel v. Central Crane Service, 232 So.2d 739 (Fla.1970), “full time wages” for purposes of subsection (l)(d) must be based on either the contract of employment or actual earnings. Here, the claimant apparently worked on an “as needed” basis, with no specific indication that the employer guaranteed the amount of work that would be available. On the other hand, claimant’s actual earnings are difficult to compute because his earnings were erratic. Thus, the unique circumstances of the case do not facilitate application of subsection (d). In the past, we have approved the averaging of wages[4]- to establish a claimant’s actual earnings when the circumstances do not easily lend themselves to a proper calculation, but such methodologies would not ordinarily permit the inclusion of an allowance which had not been paid for an extensive period of time prior to the accident.
However, in spite of the parties’ assumption that subsection (d) is the only section applicable in this case, neither the record nor the order indicates that section was in fact applied by the deputy. Instead, the *1000 deputy s calculations appear to be based on either: (1) an unauthorized formula devised to fit the circumstances of this case, or (2) an application of § 440.14(l)(c), Florida Statutes.[5] Absent a waiver, the deputy must, of course, utilize statutory methods to reach a fair result in each case. The application of subsection (c) appears to be potentially appropriate here because the employer’s testimony, noted supra, indicates that claimant’s employment may be regarded as seasonal in that the summer months were normally slower than the winter — the season when claimant had been receiving the expense allowance. Thus, the record may support a finding that claimant was a seasonal worker, and the deputy’s order does not negate such a conclusion. However, due to the ambiguity in the order,[6] we are unable to conclude with certainty that the deputy made the essential factual determination that claimant was a seasonal worker. We therefore remand the cause to the deputy commissioner with directions that he reconsider the methodology utilized to arrive at claimant’s average weekly wage, and make a determination of the appropriate average weekly wage on the basis of one of the statutory provisions in § 440.14.
SHIVERS and NIMMONS, JJ., concur.

. See e.g. Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982).

. Due to a mechanical malfunction of the recording equipment, this court did not have the benefit of a transcript of the hearing. However, the parties entered into a stipulated reconstruction of the testimony and arguments.

. The deputy divided the total amount of expense money received during the year of the accident and divided it by the number of days the claimant worked to calculate an average weekly amount of $38.95.

. See O.T. Sims & Assoc. v. Merchant, 435 So.2d 884 (Fla. 1st DCA 1983); Florida Cast Stone v. Dehart, 418 So.2d 1271 (Fla. 1st DCA 1982).

. (c) If an employee is a seasonal worker and the foregoing method cannot be fairly applied in determining the average weekly wage, then the employee may use, instead of the 13 weeks immediately preceding the injury, the calendar year or the 52 weeks immediately preceding the injury. The employee will have the burden of proving that this method will be more reasonable and fairer than the method set forth in paragraphs (a) and (b) ....

. The appealed order is specific insofar as it explains the rationale for finding that the allowance constituted wages (a question not challenged by the employer/carrier) and is specific in describing how the actual figures were reached. The ambiguity lies in our inability to determine which statutory provision the deputy relied on in reaching his conclusion. The order does find that “the few weeks immediately preceding his accident were a very slow work period. The fairest method ... is to use the method originally adopted by the E/C which was to average the 1982 calendar year subtracting the four weeks during which the plant was shut down.”