ERVIN, Judge,
specially concurring.
I concur in affirming the deputy’s order solely because I feel bound by the rule stated in Apholz v. North American Van Lines, 427 So.2d 1094 (Fla. 1st DCA 1983); Coles v. Gainesville Bonded Warehouse, 409 So.2d 1205 (Fla. 1st DCA 1982); Silver Springs, Inc. v. Scardo, 408 So.2d 844 (Fla. 1st DCA 1982), and their progeny, holding that an employee cannot utilize the method prescribed by section 440.14(l)(c), Florida Statutes, if he or she has in fact worked for *200 13 weeks preceding the employee’s injury. Nevertheless, I disagree with the above cases because they follow a rule announced in earlier case law which was later superseded by statutory amendment. Coles cited Waymire v. Florida Industrial Commission, 174 So.2d 404 (Fla.1965) and Adams v. Florida Industrial Commission, 110 So.2d 455 (Fla. 1st DCA 1959), as support for its statement that Section 440.-14(l)(a), Florida Statutes, prescribes the exclusive method for computing an employee’s average weekly wage (AWW), “regardless of whether the claimant is working during a slack or busy period of time.” 409 So.2d at 1206. Both Waymire and Adams held that if an employee works the 13 weeks preceding his injury, the 13-week period must be exclusively used, notwithstanding fluctuations in the worker’s income, over which he may often have little or no control.
Because Apholz and Coles were founded on a faulty premise, I think it is now time to consider receding from them, and instead give effect to the legislative intent, evidenced from even a cursory reading of subsection (l)(c), in situations where an employee can establish regular, seasonal changes in income, notwithstanding that he may have worked for 13 weeks before his industrial accident.
In commenting upon Florida cases, i.e., Adams v. Florida Industrial Commission, decided before the 1974 legislature amended section 440.14 by including the seasonal employment method of determining AWW, Professor Larson stated: “The State of Florida, for some reason, has contributed a series of the most inexcusably rigidified interpretations of the wage formula to be found anywhere.” 2 Larson, Workmen’s Compensation Law, s. 60.-11(d), 10-556 (1981) [hereinafter: Larson]. In 1974, the legislature added subsection (3) (now subsection (l)(c)) to section 440.14, which provides in part: “If an employee is a seasonal worker and the foregoing method cannot be fairly applied in determining the average weekly wage, then the employee may use, instead of the 13 weeks immediately preceding the injury, the calendar year or the 52 weeks immediately preceding the injury.” (emphasis supplied) The statute does not define the term seasonal worker (nor for that matter is a definition found anywhere under chapter 440), and requires only that the worker establish that the method provided by the subsection “be more reasonable and fairer” than the methods set forth in the preceding statutory subsections.
In the absence of a statutory definition of the term, I regard opinions that hold an employee is excluded from consideration as a seasonal employee, simply because he has worked 13 weeks before the occurrence of an industrial injury, to be contrary to the legislative purpose behind the enactment of section 440.14(l)(c). The dictionary’s definition of the word “season” certainly does not exclude a year-round employee, subjected to a variable income, from such entitlement. Among other things, season is defined as “a period of time [a slack season in business]_” Webster’s New World Dictionary (Second College Ed.). Perhaps the most commonly understood example of a seasonal employee is an agricultural employee, one who works only during seasonal parts of the year. The legislature, however, in creating subsection (l)(c), could not have had such employees in mind, because they are generally excluded from the definition of employment under the Workers’ Compensation Law.[1] See Section 440.-02(13)(c)2.
*201 In the ease at bar, the employee clearly met his burden of proving that the seasonal employment method was far more reasonable and fair to him than that prescribed by subsection (l)(a). He showed that in the year preceding his accident, his AWW for the 20 weeks during the time of the employer’s greatest business activity (August 12 through November 4, and December 31 through February 23) was $596.86, whereas during the remaining 32 weeks of the year his AWW was $366.05.[2] The evidence clearly establishes that such increases in activity were annually recurring, hence seasonal, in that they were attributable to the large influx of returning university students, during specified times of the year, who required cable-television installations. If appellant’s AWW had been computed by the seasonal worker method, for the 52 weeks preceding his accident, his compensation rate would have been determined on an AWW of $454.83, rather than the sum of $379.80, as found by the deputy. In my judgment, appellant did all that was required of him by the statute.
I also regard the deputy’s determination that the method provided by subsection (l)(a) controls the issue of how appellant’s AWW should be ascertained, to be one of law, not of fact. He found that section 440.14(l)(c) was inapplicable “[bjecause ... Claimant worked substantially for the 13 weeks preceding his injury....” Given our prior opinions in Coles, Apholz and Scardo, I do not see how he could have found to the contrary. Since the worker is statutorily allowed to produce evidence of his wages for the 52 weeks preceding an injury, and if he is able to establish his status as a seasonal employee, any rule which inflexibly bars him from the right to use the method provided in subsection (l)(c), once it is shown that he worked the immediate 13 weeks preceding his injury, is clearly at variance with the plain language of subsection (l)(c).
The appellee’s reliance on the mandatory provisions of section 440.14(l)(a), stating that if the employee has worked the 13 weeks preceding the injury, “his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks[,]” (emphasis supplied) is, in my judgment, misplaced. The language of subsection (l)(a) was first enacted by the Florida Legislature in 1941. See Ch. 20672, § 3, Laws of Fla. (1941). Subsection (l)(c) was, as previously noted, adopted in 1974, and the title of the act states that its enactment was for the specific purpose of providing an “alternative method of compensation for seasonal workers.” Ch. 74-197, Laws of Fla. (emphasis supplied).
The exclusive utilization of the method provided in subsection (l)(a) in cases where the employee has worked 13 weeks before an injury, regardless of any consideration of the employee’s status as a seasonal employee, moreover runs counter to the frequently-cited rule of statutory construction which recognizes that a later statute dealing with a specific subject takes precedence over an earlier statute covering the same subject in general terms. Tribune Co. v. School Board of Hillsborough County, 367 So.2d 627 (Fla.1979); Brescher v. Associates Financial Services Co., Inc., 460 So.2d 464 (Fla. 4th DCA 1984); Strahl v. Strahl, 431 So.2d 729 (Fla. 3d DCA 1983); Marston v. Gainesville Sun Publishing Co., Inc., 341 So.2d 783 (Fla. 1st DCA 1976). The above rule should be applied to the case at bar. The two subsections, when considered together, cannot be rationally harmonized. Clearly there is an unresolvable conflict between the two as applied to situations where a seasonal em *202 ployee has worked substantially the whole of 13 weeks immediately preceding his injury. In such situations, effect must be given to the later, more specific statute in order to carry out the legislative intent of providing an alternative method of computing a seasonal worker’s AWW.
The exclusive reliance upon section 440.-14(l)(a), under circumstances where the employee has worked 13 weeks before a work-related injury, is also inconsistent with another rule of statutory interpretation, as applied exclusively to the Workers’ Compensation Act: If a statute permits two divergent interpretations, one favorable to the employee and the other unfavorable, the interpretation more favorable to the employee will be adopted. Kerce v. Coca-Cola Company-Foods Division, 389 So.2d 1177 (Fla.1980); LaBrecque v. Florida Vocational Rehabilitation and Division of Risk Management, 380 So.2d 482 (Fla. 1st DCA 1980). In my judgment, fairness requires the application of the above rule to the instant case.
If the claimant at bar had been fortuitously injured in November or February, during the peak periods of his employer’s business practices, and the 13-week method used, his AWW would have been much higher than that determined to be appropriate for the 13 weeks preceding his injury of May 24, 1984. Under the method approved by the deputy, the date of the injury thus establishes the worker’s wage calculation, regardless of any consideration of seasonal changes in the employer’s business activities. Surely such an arbitrary determination is at odds not only with any attempt to assay with fairness a claimant’s probable future earning capacity,[3] but also with the legislative purpose in adding the amendment: to permit a worker, at his option, to have his wage calculated pursuant to the seasonal employment method in those instances in which subsections (l)(a) and (b) cannot be fairly applied in determining the average weekly wage....”

. One commentator has observed the difficulty of determining who qualifies as a seasonal worker:
Case law gives us little to hang our legal hat on in stating conclusively what constitutes seasonal work. Mostly, we think of agricultural-type employment or casual labor in that category, but both are excluded from coverage.... One might suggest that much of Florida’s tourist trade is seasonal, that some types of sales work or some citrus processing work is seasonal, but these must remain only "suggestions” at best.
See 7 West's Florida Practice, § 435 at 181 (1982). We recently stated that a claimant, employed as an over-the-road driver, might be considered a seasonal worker, because the record disclosed that the summer months of his em *201 ployment were normally slower than the winter months. Industrial Fiberglass Manufacturers & Employers Casualty Co. v. Davis, 460 So.2d 998, 1000 (Fla. 1st DCA 1984). The court in Davis, however, was not confronted with the question of the applicability of section 440.14(l)(a) in that claimant had not worked the requisite 13 weeks before his injury due to a lay-off of all employees several months before the accident, caused by a fire at the plant.

. Claimant’s employment duties included both sales and installations of cable service. For the former he was paid by commission, and for the latter, by the job.

. In Professor Larson's view, the entire purpose behind wage calculation "is to arrive at a fair approximation of claimant’s probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable earnings, perhaps for the rest of his life.” Larson, § 60.11, at 10-564 (emphasis supplied).