399 So.2d 396 (1981)
Jerry JETTON, Appellant,
v.
JACKSONVILLE ELECTRIC AUTHORITY, Appellee.
No. VV-212.
District Court of Appeal of Florida, First District.
May 29, 1981.
Rehearing Denied July 1, 1981.
Robert L. Cowles and James R. Barfield, of Cowles, Coker & Myers, Jacksonville, for appellant.
Dawson A. McQuaig, Gen. Counsel, and William Lee Allen, Asst. Gen. Counsel, City of Jacksonville, Jacksonville, for appellee.
ROBERT P. SMITH, Jr., Judge.
Jetton, injured when building materials he was carrying touched a JEA electrical transmission line, appeals a circuit court decision that Section 768.28(5), Florida Statutes (1977), constitutionally imposes a monetary limit on governmental tort liability. Appellant argues that the statute violates constitutional guaranties of redress for injury,[1] equal protection,[2] and due process,[3] *397 among others. We find no unconstitutional infringement of these rights in a statute altering the common law to enhance the overall protection available now to victims of governmental torts. We affirm.
Section 768.28 waives sovereign immunity to tort claims against the state and its subdivisions in cases where a private person would be liable.[4] While exposing those governmental units to substantially broadened liability for their torts, the legislature at the same time placed limits on recovery of $50,000 per individual and $100,000 per incident and noted that claimants remain free to seek legislative relief bills, as they did during days of complete sovereign immunity.[5] In 1977, the legislature further amended Section 768.28(5) to make clear that the waiver and new recovery limits applied to tort actions growing out of "proprietary" as well as "governmental" functions of municipalities.[6] Traditionally, no sovereign immunity attached to proprietary functions; a municipal corporation, like any other corporation, was deemed to act in proprietary matters for private, not public, benefit. E.g., Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 So. 457 (Fla. 1931). Use of the "proprietary function" test to determine the existence of municipal sovereign immunity, long subject to criticism,[7] was laid to rest in Florida by Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
*398 We cannot accept appellant's threshold contention that JEA is not entitled to the Section 768.28(5) limitation on recovery because it is not a municipal agency. We agree with JEA that it is a governmental unit, an electric utility operated by the City of Jacksonville. Ven-Fuel v. Jacksonville Electric Authority, 332 So.2d 81 (Fla. 3d DCA 1975); Amerson v. Jacksonville Electric Authority, 362 So.2d 433 (Fla. 1st DCA 1978). The waiver of sovereign immunity under the statute clearly extends to units that, like JEA, are "primarily acting as instrumentalities or agencies of ... municipalities." Fla. Stat. § 768.28(2) (1977).
Mindful of the presumption that legislative enactments are constitutional, e.g., Cilento v. State, 377 So.2d 663 (Fla. 1979), we turn to appellant's argument that the legislature impermissibly abolished rights to redress under Article I, Section 21 of the Florida Constitution when it limited the amount he may recover to $50,000. Prior to enactment of Section 768.28, appellant argues, his recovery would have been unlimited because operating an electric plant is a proprietary function. On the basis of Kluger v. White, 281 So.2d 1 (Fla. 1973), appellant would have us find that this legislative alteration of his prior right interferes unconstitutionally with his redress for injuries, absent any adequate substitute remedy.
While we may agree with appellant that municipal electrical operations were proprietary functions under the now discarded test for municipal sovereign immunity, we disagree with his assertion that Kluger dictates the result he desires. In Kluger, the Supreme Court held only that the complete abolition of a prior common law right to recover for automobile accident property damages violates the right to redress provision, absent either a substitute remedy "to protect the rights of the people of the State to redress for injuries" or a legislative demonstration of "overpowering public necessity." 281 So.2d at 4.
Guided by case law subsequent to Kluger, we narrowly construe the instances in which constitutional violations will arise. The Constitution does not require a substitute remedy unless legislative action has abolished or totally eliminated a previously recognized cause of action.
As discussed in Kluger and borne out in later decisions, no substitute remedy need be supplied by legislation which reduces but does not destroy a cause of action. The Court pointed out that legislative changes in the standard of care required, making recovery for negligence more difficult, impede but do not bar recovery, and so are not constitutionally suspect. Kluger, 281 So.2d at 4, discussing McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (Fla. 1942) (automobile guest statute). Accord, Abdin v. Fischer, 374 So.2d 1379 (Fla. 1979) (limiting liability of owners of public recreational areas). Similarly, shortening the period in which a litigant may sue, as opposed to barring his cause of action entirely, does not trigger the substitute remedy requirement.[8] Nor does elimination of one possible ground for relief require the legislature to provide some replacement.[9]
In contrast to Kluger and other cases[10] involving complete abolition of an established cause of action, appellant's cause of action has only been limited by the imposition of a dollar cap on the available recovery. Moreover, appellant frames the constitutional question too narrowly when he complains that those injured by governmental negligence in proprietary functions *399 have by this statute been deprived of access to their previous remedies. In identifying the cause of action arguably abolished or limited, we need not myopically concern ourselves only with that discrete class of persons who are injured by municipal negligence in performing a proprietary function. Appellant and others so injured are properly viewed as among all victims of tort committed by municipalities or other governmental agencies affected by the statute in question. To benefit that larger class the legislature waived government's tort immunity and created general liability where there was none previously, eliminating arbitrary distinctions between tort victims.
Consider White v. Clayton, 323 So.2d 573, 575 (Fla. 1975), in which the Court found no constitutional infirmity in changes to the wrongful death statute which "increase[d] damages in some circumstances and decrease[d] them in others." The class of persons whose access to remedies the Court examined in White included all those family members who are financially injured by the wrongful death of another. Here, similarly, we are concerned with the access rights of all those injured by governmental negligence. Finding that the class as a whole retains access to prior remedies or achieves access to greater remedies, as a result of the legislation, ends the constitutional inquiry, regardless of limitations placed on the recoveries of some within the class. Any rule preventing the legislature from decreasing the remedies of some within the affected class, while increasing the remedies of others, would appear to commit Florida constitutionally to an ever expanding tort liability system. By no means is that a recognized constitutional principle. See also Estate of Cargill v. City of Rochester, 119 N.H. 661, 664-65, 406 A.2d 704, 706 (1979) ($50,000 statutory limit on municipal tort liability does not violate state constitution's right to certain remedy clause); Stanhope v. Brown County, 90 Wis.2d 823, 844-45, 280 N.W.2d 711, 720 (1979) ($25,000 limit does not violate similar clause).
Appellant also argues that Section 768.28 is unconstitutional because it violates the due process and equal protection clauses. As to due process, we are not prepared to find that the legislature had no rational basis for imposing a $50,000 recovery limit if that limit was considered sufficient to permit full recovery in the vast majority of the cases.[11] Such a limit also permitted governmental units to order their fiscal planning. Accord, State v. Silva, 86 Nev. 911, 478 P.2d 591 (1971). For the same reasons we find no violation of equal protection, there being a rational relationship between the statutory classifications of tort victims and the object of the legislation. E.g., Lasky v. State Farm Ins. Co., 296 So.2d 9, 18-20 (Fla. 1974). Here the classifications were designed to enable enhanced recoveries in most cases while recognizing that requiring local governments to protect themselves against full liability could impose too heavy a financial burden on local taxpayers. See Stanhope, supra.
Since Section 768.28 neither abolished any common law rights to redress nor irrationally impinged other constitutional guarantees, we find its limits on tort liability constitutional. Absent any finding of arbitrariness, it is the legislature that must determine periodically whether such limits on recovery should be adjusted for inflation or, as some suggest, to reflect differing abilities to pay between major state agencies and minor hamlets.[12] The decision of the trial court is AFFIRMED.
SHAW, J., and RUDD, JOHN A., Associate Judge, concur.
NOTES
[1] Article I, Section 21 of the Florida Constitution provides:

The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
See generally, Note, Article I, Section 21: Access to Courts in Florida, 5 Fla.St.U.L.Rev. 871 (1977).
[2] U.S.Const. amend. XIV § 1; Art. 1, § 2, Fla. Const.
[3] U.S.Const. amend. XIV § 1; Art. I, § 9, Fla. Const.
[4] Section 768.28(5), Fla. Stat. (1977), in pertinent part provides:

The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000.
[5] The statute notes:

However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.
[6] Doubt on this point arose after the Attorney General issued an opinion that the statute did not impose a limit on municipal liability for torts arising out of proprietary functions. [1976] Ann.Rep.Atty.Gen.Fla. 70. In response the legislature in 1977 amended the statute, in effect overruling the Attorney General, to provide:

The limitations of liability set forth in this subsection shall apply to the state and its agencies and its subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity prior to July 1, 1974. Ch. 77-86, § 1, Laws of Fla.
See generally, Budetti & Knight, The Latest Event in the Confused History of Municipal Tort Liability, 6 Fla.St.U.L.Rev. 927, 933-37 (1978). For argument prior to the 1977 amendment that the statute was designed to eliminate the proprietary-governmental distinction, see Seligman and Beals, The Sovereignty of Florida Municipalities: In-Again, Out-Again, When-Again, 50 Fla.Bar.J. 338, 339-340 (1976).
[7] The preeminent early critic was Professor Borchard. Borchard, Governmental Liability in Tort, 34 Yale L.J. 1, 129, 229 (1924). See also Price & Smith, Municipal Tort Liability: A Continuing Enigma, 6 U.Fla.L.Rev. 330, 353 (1953); W. Prosser, Law of Torts, § 131 at 979-84 (4th ed. 1971). The arguments in favor of imposing more restrictions on tort suits against municipal, as opposed to private, corporations even in the operation of proprietary functions were well stated in another context in Martineau v. City of Daytona Beach, 47 So.2d 538, 539 (Fla. 1950): municipal corporations are created for the benefit of the entire community not individual financial gain, profit from proprietary operations goes into the public treasury and claims for injuries are paid out of the same public treasury so the well-being of the entire community is affected. See also Little, In Defense of the 1968 Florida Constitution's Statement on Sovereign Immunity, 52 Fla.Bar J. 660, 661-62 (1978); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1016 (Fla. 1979).
[8] Compare Purk v. Federal Press Co., 387 So.2d 354 (Fla. 1980) and Bauld v. J.A. Jones Construction Co., 357 So.2d 401 (Fla. 1978) with Overland Construction Co., Inc. v. Sirmons, 369 So.2d 572 (Fla. 1979).
[9] In Estate of Roberts, 388 So.2d 216 (Fla. 1980), the Supreme Court found no impermissible interference with right to redress when the legislature eliminated nondisclosure as grounds for invalidation of a prenuptial agreement. The court noted that the legislature had not abolished the appellant's right to sue to have such an agreement set aside, just eliminated one reason for doing so. 388 So.2d at 217.
[10] Sirmons, n. 8 supra; Sunspan Engineering & Construction Co. v. Spring-Lock Scaffolding Co., 310 So.2d 4 (Fla. 1975).
[11] The House Judiciary Committee, which drafted the version approved by the legislature, heard testimony from a representative of The Academy of Florida Trial Lawyers that even a $25,000 limit on individual recoveries would cover the vast majority of the claims. Meeting tape, April 12, 1973: Fla. State Archives, Series 19, Carton 447TA. The House also considered and rejected an amendment that would have increased the limits to $100,000 per individual and $300,000 per incident. J.Fla.House of Reps. 518 (1973).
[12] See Leonard, Municipal Tort Liability: A Legislative Solution Balancing the Needs of Cities and Plaintiffs, 16 Urban L.Ann. 305, 325 (1979). See also the preamble to Chapter 77-86, Fla.Laws, referring to the cost of insurance "often beyond the ability of the local taxpayers to afford."