606 So.2d 400 (1992)
Randy SHOVA, Individually, and as Personal Representative of the Estate of Felicia Shova, Appellant,
v.
Karl ELLER, Robert Dearth and Richard Yarnell, Appellees.
No. 91-02087.
District Court of Appeal of Florida, Second District.
September 4, 1992.
Rehearing Denied October 20, 1992.
*401 James A. Sheehan, St. Petersburg, for appellant.
A. Wade James, Hampp, Schneikart & James, P.A., St. Petersburg, for appellees.
RYDER, Acting Chief Judge.
We have for review an issue concerning the trial court's dismissal of Randy Shova's second amended complaint in this action for gross negligence. We reverse.
The complaint was filed against fellow employees of the deceased, Felicia Shova, for simple negligence and for gross negligence which was alleged to have caused Felicia's death. Randy Shova was Felicia's husband and is the personal representative of her estate.
Mr. Shova's complaint alleged that appellee, Karl Eller was the chairman of the board of Circle K Corporation where Felicia worked and was responsible for formulating the policies of Circle K at the time of the incident which caused Felicia's death. Appellee, Robert Dearth, was the president of Circle K and was responsible for implementing the policies of Circle K at the time of the incident that caused Felicia's death. Appellee, Richard Yarnell, was the regional manager of Circle K and was responsible for implementation of policies, supervision, staffing and security at Circle K stores in west central Florida and in particular, the store where Felicia worked at the time of her death, which was located at the corner of Armenia and Waters Avenues in Tampa (the store).
Mr. Shova's complaint alleged that Felicia was employed continuously as an assistant manager and store manager by Circle K from July 1987 until January 26, 1990 at the store. The store is only one of a number of Circle K stores located in the Tampa Bay area. The complaint alleged that the geographic area in which the store is located has, for the past five years, experienced a significantly high crime rate in Hillsborough County which has increased each year. Most of the incidents of crime in the area where the store is located have occurred at the store. The store had been opened for two years at the time of the incident that caused Felicia's death. During that time, six to eight robberies had occurred at the store, five of them being armed robberies. Felicia had been a victim of one of these armed robberies in December of 1988. Theft was routine.
For most of the period that the store had been in operation prior to January 26, 1990, it had operated twenty-four hours a day. Felicia was a supervisor at the store. Immediately prior to January 26, 1990, Felicia had a problem with low sales and decreasing inventory on the 11:00 p.m. to 7:00 a.m. shift. In order to determine what was causing the problems on the late shift, Felicia had to work the shift herself. It was *402 the policy of Circle K at that time that only one person worked the late shift.
Mr. Shova's complaint further alleged that on January 26, 1990, the store was not equipped, by Circle K, with adequate security equipment such as additional personnel, bulletproof enclosures and automatic door locks even though Circle K and appellees were well aware of the existence of these devices and of the effectiveness of these devices in preventing crime and protecting the employee. On the night of January 26, 1990, Felicia was working the 11:00 p.m. to 7:00 a.m. shift at the store alone. At approximately 11:30 p.m., the store was robbed by an individual later identified as Anthony Hill. In the course of the robbery and without provocation, Hill shot and killed Felicia.
The original complaint was a two-count complaint alleging gross negligence on the part of appellees as fellow employees, and alleging simple negligence against appellees as employees working in unrelated employment. The basis of both counts was that appellees knew that the store was located in a high crime area; that previous incidents of armed robbery involving guns and knives occurred at the store; that the majority of armed robberies and injuries due to armed robberies occur between the hours of 11:00 p.m. and 7:00 a.m.; and that the store in this location, operating twenty-four hours a day, with little or no effective security devices, presented an unreasonably dangerous situation for employees working the overnight shift.
The original complaint was dismissed on November 20, 1990 and an amended complaint was filed on December 13, 1990. The amended complaint was essentially the same as the original complaint except additional allegations were made in paragraph 26 to the effect that appellees were aware of the dangers of keeping the store open without adequate safeguards between the hours of 11:00 p.m. and 7:00 a.m., and knowing the dangers, they made a conscious decision to keep the store open with the knowledge that this decision was going to result, at some time, in great bodily injury to their employees.
This amended complaint was also dismissed on February 27, 1991, and a second amended complaint was filed on March 20, 1991. The second amended complaint was a one-count complaint essentially the same as the previous two complaints except Mr. Shova added the allegation that appellees' knowledge of the likelihood of serious bodily harm increased to a certainty because the store was located in a high crime area and previous armed robberies had occurred in that store. The second amended complaint also alleged that the failure to provide adequate safety devices and a conscious decision to keep the store open under all the facts and circumstances amounted to an infliction, by appellees, of actual personal injury on Felicia. The negligence claim asserting appellees were coemployees engaged in unrelated works did not appear in appellant's final complaint. The second amended complaint was also dismissed by order dated June 13, 1991. The trial court found the Florida workers' compensation system provided the exclusive remedy for appellant's injury. The court held section 440.11(1), Florida Statutes (1989), was constitutional. The final order dismissed the case with prejudice. This timely appeal followed.
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Kluger v. White, 281 So.2d 1, 4 (Fla. 1973). The Kluger court noted that in McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (1942), the court approved the automobile guest statute which raised the degree of negligence *403 necessary to maintain a tort action from negligence to gross negligence.
The supreme court approved a similar change when, in 1978, the legislature amended section 440.11(1), Florida Statutes (1977). See Iglesia v. Floran, 394 So.2d 994 (Fla. 1981). This amendment grants immunity from tort liability to coemployees who, while in the course of their employment, negligently injure other employees of the same employer, unless the employees act with willful and wanton disregard or unprovoked physical aggression or with gross negligence. Iglesia. Relying on what the court in Kluger stated about McMillan, the supreme court in Iglesia approved the 1978 amendment to section 440.11(1) which raised the degree of negligence to gross negligence in cases where an employee sues a fellow employee for injuries received within the scope of employment. Iglesia held that the legislative amendment which changed the degree of negligence does not violate the access to courts provision of the Florida Constitution.
In 1987, the Florida Supreme Court held that the term "employee" includes corporate officers and directors, thereby permitting a suit in gross negligence to be brought against officers and directors. Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987). The result of the Streeter decision was that an officer or director could be sued by a fellow employee just as any other coemployee could be sued for willful and wanton disregard or unprovoked physical aggression or for gross negligence under section 440.11(1).
In 1988, the legislature again amended section 440.11(1). This second amendment grants immunity from tort liability to
any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082.
§ 440.11(1), Fla. Stat. (Supp. 1988). This amendment raises the degree of negligence necessary to maintain a civil tort action against a coemployee in a supervisory/managerial position from gross negligence to culpable negligence constituting a misdemeanor of the first degree. See § 775.082(4)(a), (b), Fla. Stat. (1989). Section 784.05(2) provides that a person commits a first degree misdemeanor when that person, "through culpable negligence, inflicts actual personal injury on another."
Appellant argues that when the legislature amended section 440.11(1) in 1988, it essentially abolished a cause of action without providing a reasonable alternative in violation of the access to courts provision of the Florida Constitution. Appellees, on the other hand, argue that the legislature did not abolish a cause of action, because appellant is not prohibited from bringing suit under a higher degree of negligence.
Appellees rely on Iglesia in support of their position that the 1988 legislative amendment to section 440.11(1) does not violate the access to courts provision of the Florida Constitution. Appellees contend that under Iglesia the legislature may change the degree of negligence necessary to maintain a tort action, as long as the plaintiff can still bring some type of action. Under the 1988 amendment to section 440.11(1), appellees, as managerial/policymaking-type employees, claim they are immune from suit for gross negligence.
By this 1988 amendment to section 440.11(1), the legislature has taken away a cause of action in negligence and in gross negligence and in so doing has abolished any civil cause of action in negligence. The only similarity in negligence, gross negligence and culpable negligence is the word "negligence." Culpable negligence is criminal negligence which is equivalent to an intentional act. See Barber v. State, 592 So.2d 330 (Fla. 2d DCA 1992) and cases cited therein. As a consequence, the legislature has abolished a cause of action for unintentional acts by a fellow employee in *404 a managerial/policymaking capacity in the state of Florida.
Appellees argue that the workers' compensation system provides a reasonable alternative to a cause of action in gross negligence against a fellow employee. It is true that through history the Workers' Compensation Act has served as a reasonable alternative to tort law. See, e.g., Martinez v. Scanlan, 582 So.2d 1167, 1171-72 (Fla. 1991) (reduction of benefits did not deny access to courts as system remained a reasonable alternative to tort suits), and cases cited therein. However, appellees overlook the fact that the workers' compensation system provides no alternative as far as coemployees are concerned. Workers' compensation provides an alternative only as to an employer. Accordingly, appellees' reliance on the workers compensation system as a reasonable alternative in this case is misplaced.
We feel that the legislature has gone too far with this 1988 amendment to section 440.11(1). Although an injured employee may still be able to bring some type of action, the "reasonable alternative" provided  proof of a first degree misdemeanor  is an insurmountable task in most cases, and amounts to no alternative at all. This alternative which raises the threshold of liability to culpable negligence is really an illusory right to redress and amounts to virtually no access to the courts in situations like the one presented here. If we were to hold that this 1988 amendment were constitutional, we fear that the legislature may next raise the degree of negligence necessary to maintain a tort action by an injured employee, to a third degree felony. Just how far can the legislature go if we hold this criminal standard of liability to be a reasonable alternative to negligence actions between coemployees?
Because the legislature abolished a civil cause of action in negligence, for an unintentional act, we hold that section 440.11(1), as amended, is unconstitutional, as it violates the access to courts provision of the Florida Constitution. Art. I, § 21, Fla. Const.
Reversed and remanded for further proceedings.
THREADGILL, J., concurs.
ALTENBERND, J., dissents with opinion.
ALTENBERND, Judge, dissenting.
Although the amendment to section 440.11 in chapter 88-289, Laws of Florida, addresses a legitimate problem, it provides a misguided solution. Therefore, I truly regret that I cannot join in the majority's opinion. The dispositive issue before this court is whether the balance of power established in 1968 by article I, section 21, of the Florida Constitution gives the judiciary the authority to facially invalidate this questionable legislative enactment. Especially in the context of this case, I do not believe that this court has that power.
Mrs. Shova's personal representative is attempting to sue management-level employees of her corporate employer, Circle K, for their alleged negligence in the making of management decisions relating to the safety of her workplace. Allegedly, as a result of these decisions, Mrs. Shova was killed by the intentional, criminal act of a third party on January 26, 1990. There is no dispute that Circle K is obligated to provide workers' compensation benefits for this death.
The first constitutional question presented is whether chapter 88-289 deprived Mrs. Shova of "a right of access to the courts for redress for a particular injury [that was] provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right ha[d] become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A." Kluger v. White, 281 So.2d 1, 4 (Fla. 1973). Only if we answer this question in the affirmative must we decide whether the legislature provided a "reasonable alternative to protect the rights of the people of the State to redress for injuries."[1]Kluger, 281 So.2d at 4. I *405 have not been able to convince myself that the legislation at issue deprived Mrs. Shova's estate of any right of redress established prior to 1968 which would necessitate a reasonable alternative remedy.

I. THIS CASE DOES NOT INVOLVE A PREEXISTING RIGHT OF REDRESS
Mrs. Shova's personal representative maintains that her estate would have had a right of redress against these managerial employees if her death had occurred in 1968 and that the 1988 legislation eliminated this right of redress. I have not found any precedent to convince me that the estate would have had any meaningful right of redress for this tragic circumstance if it had occurred in 1968. Under Kluger, we examine both statutory rights and common law rights as of that date.[2]

A. Statutory Rights in 1968

Concerning statutory rights, I can find no statute that would have allowed Mrs. Shova's estate to sue these managerial employees in 1968 for managerial decisions "causing" a death, when that death resulted directly from the intentional criminal act of a third party. Although the job of a convenience store clerk in 1992 is probably a hazardous occupation, it has never been a "hazardous occupation" for purposes of chapter 769. Moreover, even if it were a "hazardous occupation," it is not clear that chapter 769 would create any statutory right against these managerial coworkers.
The wrongful death statute, both in 1968 and now, creates a vehicle for the estate to sue only if Mrs. Shova could have sued as a survivor.[3] It creates a separate cause of action for the estate, but only if the decedent would have had a similar claim. Stokes v. Liberty Mut. Ins. Co., 213 So.2d 695 (Fla. 1968). Suffice it to say that neither this court nor the parties to this appeal have discovered a statutory cause of action for Mrs. Shova in 1968.

B. Common Law Rights in 1968 Concerning the Criminal Conduct of Third Parties

A victim of a crime in 1968 had no common law right of redress against a person whose negligence gave a criminal the opportunity to harm the victim. Even though the law now reaches a contrary conclusion, under the applicable common law of 1968, criminal conduct was not legally foreseeable. Lingefelt v. Hanner, 125 So.2d 325 (Fla. 3d DCA 1960); see also 38 Fla.Jur.2d Negligence § 44 (1982). The criminal act operated as an intervening cause of the injury, breaking the causal connection between the defendant's negligent act and *406 the victim's injury. Not until Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976), did this traditional rule of common law change. Accordingly, section 440.11 did not deprive this plaintiff of any right of redress existing at common law as of 1968. If section 440.11 deprives some other person of a theory that was viable in 1968, this constitutional question should await that person's case. See Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979); Williston Highlands Dev. Corp. v. Hogue, 277 So.2d 260 (Fla. 1973).

C. Common Law Rights in 1968 Arising from the Errors of Vice Principals

Even if Lingefelt had not been the controlling common law in 1968, Mrs. Shova's estate would still confront a complex legal issue which the supreme court did not resolve in Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987). That issue is whether a corporate employee had a right of redress against a management-level employee in 1968 for a negligent decision depriving the employee of a safe place to work. I have found no precedent in Florida in which any employee successfully sued a managerial employee under this theory. If such a right existed, it was a very quiet right of redress.
Prior to the advent of workers' compensation, an employee was liable for negligently injuring a coworker, but an employer could not be held liable to one employee for the negligence of another. See Frantz v. McBee Co., 77 So.2d 796 (Fla. 1955); Prairie Pebble Phosphate Co. v. Taylor, 64 Fla. 403, 60 So. 114 (1912). This "fellow servant" doctrine operated as an exception to the theory of respondeat superior and apparently applied to exempt the employer, even in cases of an employee's willful or malicious conduct or criminal acts. See 56 C.J.S. Master and Servant § 325 (1948).
An exception to the fellow servant doctrine developed which allowed the employer to be held liable for the negligence of "vice principals," managerial employees charged with carrying out the employer's common law duties. See Ingram-Dekle Lumber Co. v. Geiger, 71 Fla. 390, 71 So. 552 (1916); Stearns & Culver Lumber Co. v. Fowler, 58 Fla. 362, 50 So. 680 (1909). This vice principal exception made nondelegable some, if not all, of the employer's common law duties, including the duty to provide a safe workplace. Employees could sue their employers for breach of such nondelegable duties. The vice principals, who were responsible for carrying out these nondelegable duties, however, owed these duties to the employer  not to the other employees. Stearns & Culver. Thus, regardless of whether it was the employer or the vice principal who committed the breach, the inured employee's cause of action was against his or her employer and not the vice principal. I have found no Florida case imposing joint and several liability on the employer and the vice-principal for a negligent act concerning such a nondelegable duty.[4]
To the best of my knowledge, these rules of common law have never been completely abrogated. They were first eliminated for a select group of hazardous occupations in chapter 769. Thereafter, by "mutual renunciation," both employees and employers within the workers' compensation system gave up common law rights and defenses. Section 440.015, Fla. Stat. (1989). Therefore, if an employer who is obligated to pay workers' compensation benefits fails to do so, he may not avail himself of the common law defenses. Section 440.06, Fla. Stat. (1989). Mrs. Shova's estate is not attempting to sue her employer for a failure to secure compensation; she is attempting to sue outside the workers' compensation system for damages. The legislature has never abrogated these defendants' right to claim that their managerial functions are nondelegable functions of the employer. If the supreme court overruled Stearns & *407 Culver by 1968, I have not located that precedent.[5]
It was in the context of this common law that the Second District decided West v. Jessop, 339 So.2d 1136 (Fla.2d DCA 1976), Zurich Insurance Co. v. Scofi, 366 So.2d 1193 (Fla.2d DCA), cert. denied, 378 So.2d 348 (Fla. 1979), and Kaplan v. Circuit Court of the Tenth Judicial Circuit for Polk County, 495 So.2d 231 (Fla. 2d DCA 1986).[6] This court essentially concluded that a coworker who was a vice principal performed a nondelegable duty. Thus, such a vice principal had no actionable duty under the common law to a coworker or, alternatively, possessed the same statutory immunity that the employer possessed for that duty.

D. Statutory Rights and Common Law After Streeter
In Streeter, the supreme court held that section 440.11, Florida Statutes (1981), did not statutorily distinguish between types of corporate employees and that the statute did not provide immunity for managerial employees. Streeter did not discuss vice principals or the law as it existed in 1968. Admittedly, that opinion does state that the "affirmative act doctrine" had "no roots in the common law, where a corporate officer was without doubt liable for gross negligence, and perhaps even simple negligence." Streeter, 509 So.2d at 271 n. 4. As authority for this proposition, however, Streeter relies upon Frantz v. McBee Co., 77 So.2d 796 (Fla. 1955), which involved a management-level employee who negligently operated a motor vehicle. Because the negligent employee in Frantz was not carrying out any of the employer's nondelegable duties, he was not acting as a vice principal.[7] Thus, the supreme court in Streeter did not change the common law concerning nondelegable duties or the law of vice-principals.
Although Scofi, West, and Kaplan have been overruled by Streeter, I continue to believe that they accurately analyzed the common law liability of a vice principal in 1968. Therefore, I conclude that the legislature had the constitutional power to overrule Streeter and to provide an amendment to section 440.11 which strictly limits the right of redress against people who would have been vice principals under the common law of 1968. I do not believe that article I, section 21, gives this court the power to overrule the legislature's judgment on this subject, even if the legislature's judgment is poor.[8]

II. WORKERS' COMPENSATION BENEFITS CAN PROVIDE A REASONABLE ALTERNATIVE TO TORT LIABILITY FOR BOTH EMPLOYERS AND COWORKERS
Even if I could conclude that Mrs. Shova's estate would have had an established cause of action against these Circle K managers under 1968 law, I would still reluctantly find that chapter 88-289 is constitutional.
*408 The constitutionality of the alternative remedy of workers' compensation benefits is already well-established in the case law.[9] The more difficult question, however, concerns the scope or the extent of the rights of redress that may be eliminated or modified in exchange for this alternate remedy. In addition to the employer's immunity, can coworkers, both fellow servants and vice principals, receive broad immunity for acts of negligence in exchange for the remedy of workers' compensation benefits? I conclude that, so long as the benefits are substantial, workers' compensation benefits are an acceptable, reasonable alternative to most tort remedies that were available to an employee in 1968 against both employers and coemployees.[10]
In order to properly evaluate whether the alternative remedy provided in chapter 440 is sufficient under Kluger, it is necessary to consider the status of the law in 1968. It is easy to lose sight of the fact that the law was far less generous to plaintiffs at that time. Contributory negligence and assumption of the risk were still the law in 1968. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). Those doctrines frequently, if not usually, destroyed negligence claims arising in the workplace. See generally Arthur Larson, Workmen's Compensation, (Desk ed. 1991) § 4.40 (if consequences of employer's breach of common law nondelegable duties were "obvious" to employee, then employee had a duty to "look out for himself").
If Mrs. Shova's estate had sued in 1968 alleging negligence against her managerial coworkers, she would have faced strong arguments that she had assumed the risks of criminal attack because she had equal or superior knowledge of those risks at her store, and because she had agreed to work the night shift, despite her knowledge of the potential dangers.[11] In exchange for this type of difficult, expensive, and time-consuming lawsuit concerning the safety of her workplace, the workers' compensation statute gives her the ability to quickly recover a significant portion of her damages without regard to fault.[12]
I admit that the legislature's solution, immunity for any act that is not so egregious as to amount to a second-degree misdemeanor, is a very high standard which will prevent the prosecution of many claims that might seem merit-worthy under the tort law of 1992. Essentially, the legislature is allowing a claim for acts that "inflict" personal injury through culpable negligence and prohibiting a claim for acts that merely "expose" one to such personal injury.[13]See § 784.05, Fla. Stat. (1989). This distinction between "inflicting" and "exposing" will apparently require active involvement on the part of the culpably negligent managerial employee that will, for example, make it easier to pursue a claim against a local manager as compared to *409 someone in a regional office. It will not allow for the claim alleged by Mrs. Shova's estate. Without speculating on the types of claims that can be pursued under this statute, I remain convinced that some claims have not been barred. This statute perhaps represents the extreme limit in the shift of a standard of care permitted under Iglesia v. Floran, 394 So.2d 994 (Fla. 1981), but I cannot declare it unconstitutional.
It is important to realize that article I, section 21, performs at least two distinct constitutional functions. The first is to prevent the judiciary from creating unreasonable procedural roadblocks that restrict access to courts. The second is to protect the substantive rights of the people through judicial checks on the power of the legislature.
In the context of the first function, I agree that the judiciary should liberally construe article I, section 21, to limit its own power. See Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974) (access to courts provision liberally construed with respect to rules governing time to file motion for new trial). This case, however, is not such a case.
This case involves the second function of article I, section 21  its use by the judiciary to protect the substantive rights of the people by checking the power of the legislature. If article I, section 21, is to achieve this intended effect within the balance of governmental powers, it must give to the judiciary only that power necessary to preserve to the people redress for injuries similar to the redress which existed in 1968 when the people ratified this constitution. See Jetton v. Jacksonville Elec. Auth., 399 So.2d 396 (Fla. 1st DCA), review denied, 411 So.2d 383 (Fla. 1981) (narrowly construing the right to access to courts in determining whether the sovereign immunity statute was unconstitutional). That power must be exercised with a realization that the courts themselves continue to expand and change the common law. Moreover, our society changes with increases in population and developments in technology. Unless article I, section 21, is interpreted to protect only those rights of redress which were well-established in 1968, it shifts the balance of power, limits the legislature's ability to address new problems that are not honestly "overpowering public necessities," and authorizes the judiciary to impose anachronisms within the law. As much as I am uncomfortable with the solution devised in chapter 88-289, I am convinced that the constitution does not permit the judiciary to override the legislature's decision expanding workers' compensation immunity and precluding most suits against those managerial coworkers who perform the nondelegable functions of vice principals.
I am also influenced by three additional factors. First, the immunity given to these managerial workers is similar to the sovereign immunity given to many governmental workers and to municipalities. Prior to the waiver of sovereign immunity, many of these employees had no immunity, and municipalities had no immunity for proprietary functions. In exchange for the limited liability of the state, we have held that the legislature could create total immunity for acts of simple negligence by government employees and limit the liability of municipalities. Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981); White v. Hillsborough County Hosp. Auth., 448 So.2d 2 (Fla. 2d DCA 1983), dismissed, 443 So.2d 981 (Fla. 1983); Jetton. Moreover, under section 768.28, Florida Statutes (1991), a managerial government employee apparently receives total immunity for policymaking decisions, even though the state has not waived its immunity for these decisions. See Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). I cannot hold the amendment to section 440.11 unconstitutional when section 768.28 has passed a similar test.
Second, I am inclined to believe that chapter 88-289 creates more causes of action than it destroys. Before chapter 88-289 was enacted, a sole proprietor was unquestionably the statutory "employer" who received workers' compensation immunity. Now, if a sole proprietor commits culpable negligence, the immunity does not *410 exist. Given the number of employees who undoubtedly work for sole proprietors in businesses subject to less regulation than larger corporations, it seems unfortunate that we hold this beneficial limitation of immunity unconstitutional.[14]See Jetton, 399 So.2d at 398 (emphasizing that the sovereign immunity statute, while restricting some causes of action, "enhance[d] overall" liability).
Finally, the limitations on redress in the area of workers' compensation frequently inure to the employee's benefit. Mrs. Shova, for example, was allegedly an assistant manager. Ironically, we are holding unconstitutional an immunity which would have protected her from the risk of suit by the people she supervised. Particularly in light of the fact that most businesses operate with several management levels, there is a legitimate value to discouraging avoidable litigation within the workplace between coworkers. In my mind, the benefit an employee receives from these immunities should provide some weight in determining the reasonableness of the remedy.
I hope the legislature will soon revisit this issue because it merits serious attention, but I cannot declare its last effort unconstitutional.
NOTES
[1] If the legislature properly finds "an overpowering public necessity," it can eliminate a right of redress without providing an adequate alternative remedy. See Kluger v. White, 281 So.2d 1, 4 (Fla. 1973). Chapter 88-289, however, was not enacted upon a finding of overpowering public necessity.
[2] The constitutions of this state have contained a right of access to the courts since 1838. See G.B.B. Invs., Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977). As a result, one could argue that the right to access should be determined under the law as it existed at any one of several dates. Kluger, however, makes it clear that we are to examine the statutory causes of action existing at the time of the reenactment of the Florida Constitution in 1968. Because Kluger refers to the common law pursuant to section 2.01, Florida Statutes, it is arguable that July 4, 1776, is the correct date upon which to examine the common law. Since Kluger, however, I believe the supreme court intended to clarify this issue. See Overland Constr. Co. v. Sirmons, 369 So.2d 572 (Fla. 1979) (holding a statute unconstitutional because it eliminated a right of redress that was first recognized by the common law in 1959). Nevertheless, the supreme court has used an analysis of the common law effective July 4, 1776, to uphold sovereign immunity for municipalities. Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981). Although my argument would be stronger if I relied on the common law of 1776, I conclude that November 5, 1968, is the relevant point of inquiry for both statutory and common law rights because that is the date that the applicable constitution took effect, following ratification by the voters.
[3] For both this and the following section of this dissent, it is helpful to remember that the Wrongful Death Act was far less generous to survivors in 1968 than it is today. See § 768.01, Fla. Stat. (1965). Under the old act, the survivors did not receive pain and suffering for the death of an adult and the remedy frequently was not much more extensive than the present workers' compensation benefits. See White v. Clayton, 323 So.2d 573 (Fla. 1975); Leo M. Alpert, Death Acts in Florida, 10 U.Fla.L.Rev. 153 (1957).
[4] Under the common law of 1968, of course, the employer had no right of contribution against a joint tortfeasor, much less against a vice principal. See Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975); Kellenberger v. Widener, 159 So.2d 267 (Fla. 2d DCA 1963); § 768.31, Fla. Stat. (1989).
[5] In fact, in a somewhat confusing decision, the supreme court seems to have reconfirmed and expanded the doctrine of vice principalship. See Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940).
[6] As explained below, these cases were subsequently overruled by the supreme court in Streeter.
[7] It is interesting that chapter 88-289, Laws of Florida, does not overrule the basic rule announced in Frantz v. McBee Co., 77 So.2d 796 (Fla. 1955). A management-level employee can still be sued for gross negligence for the operation of a motor vehicle, just like any other employee. The greater immunity applies only when the manager acts "in a managerial or policymaking capacity," i.e., as a vice principal.
[8] The well-publicized debate over the need to protect store clerks at convenience stores and the best ways to address this need is difficult to ignore in this case. With pressure from all sides, the legislative branch of government has done little to mandate greater protection for these employees. See Ch. 92-103, Laws of Fla. (requiring special convenience store security only after an employee or patron has already been victimized by a serious, violent felony). The immunities provided in chapter 440 have effectively prevented the judiciary from allowing individual juries to require protection for specific employees under specific circumstances. While I find this result regrettable, I cannot convince myself that the legislature has acted unconstitutionally or that the judicial branch has the authority to override their established public policies, however questionable.
[9] See Chamberlain v. Florida Power Corp., 144 Fla. 719, 198 So. 486 (1940); Carter v. Sims Crane Serv., Inc., 198 So.2d 25 (Fla. 1967); Iglesia v. Floran, 394 So.2d 994 (Fla. 1981); Mahoney v. Sears, Roebuck & Co., 440 So.2d 1285 (Fla. 1983).
[10] Although the majority opinion emphasizes that culpable negligence is similar to an intentional tort, it seems obvious that it is still a form of negligence and not an intentional tort. See State v. Greene, 348 So.2d 3 (Fla. 1977); Glaab v. Caudill, 236 So.2d 180 (Fla. 2d DCA 1970); Fla. Std.Jury Instr. (Crim.) 784.05. I am not suggesting in this dissent that workers' compensation benefits would be an adequate remedy for battery or true intentional torts, many of which do not actually involve an incident within the scope of employment.
[11] See note 3.
[12] The full effect of workers' compensation liens will not be discussed in this opinion, but it seems relevant that Mrs. Shova would apparently be required to repay her benefits to her employer if she recovered against these vice principals for their failure to fulfill the nondelegable duty concerning a safe place to work. Section 440.39, Fla. Stat. (1989).
[13] Additionally, the language of chapter 88-289 appears to bar a claim for simple assault against an employee under 65 years of age, while permitting a claim for simple battery. See §§ 784.011(2), .03(2), Fla. Stat. (1989). Since this case does not involve these intentional torts, I will not address them. It is interesting to note, however, that the victim of a criminal assault is probably entitled to restitution even if this section provides tort immunity. Section 775.089, Fla. Stat. (1989).
[14] According to the Bureau of the Census, Department of Economic Census and Surveys, in 1987, 88.5% of all businesses in the nation were sole proprietorships. There were 735,810 total businesses in the state of Florida. Assuming the national percentages are representative of the state percentages, there were 651,192 sole proprietorships in the state of Florida in 1987.