## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 98-CC-00233-SCT

*ROBERT E. MOODY*

*v.*

*MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY/HIGHWAY PATROL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/1998 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN BOOTH FARESE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES S. HEAD |
| | RICKEY T. MOORE |
| | JAMES W. YOUNGER, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 1/14/1999 |
| MOTION FOR REHEARING FILED: | 1/27/99 |
| MANDATE ISSUED: | 4/8/99 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. <u>INTRODUCTION</u>

¶1. This case arises from the appellant's challenge to the statutory limitation on retirement benefits for Mississippi Highway Patrol employees. The hearing officer ruled the statute unconstitutional, and the Employee Appeals Board affirmed. The circuit court overruled the Employee Appeals Board, and held that the matter is a non-grievable issue under the Administrative Rules of the Employee Appeals Board; that the Employee Appeals Board is without authority to declare a statute unconstitutional; and, that the statute in question is constitutional. This Court affirms the judgment of the circuit judge.

## II. <u>STATEMENT OF THE CASE</u>

¶2. On May 13, 1996, Robert E. Moody of the Mississippi Highway Patrol (hereinafter MHP) filed a

grievance against the Mississippi Department of Public Safety (hereinafter DPS). Moody contended that the 85% statutory maximum on retirement benefits enumerated in Miss. Code Ann. § 25-13-11 (e)[1] caused him to lose accumulated leave time. The hearing officer ruled Miss Code Ann. § 25-13-11 (e) unconstitutional. Specifically, the hearing officer found that this statute violated Moody's right to substantive due process, because its application deprived Moody of 99.44 days of accumulated leave. The hearing officer ruled that Moody was entitled to either compensation for the earned, unused personal leave or to have it credited to him through the state retirement system.

¶3. DPS appealed to the Mississippi Employee Appeals Board (hereinafter EAB). On May 12, 1997, the EAB affirmed the decision of the hearing officer.

¶4. Thereafter, on May 23, 1997, the Circuit Court of the First Judicial District of Hinds County granted DPS's petition for *writ of certiorari*. On January 7, 1998, the circuit court reversed the EAB's ruling. Specifically, the circuit court held:

> This Court agrees with DPS's arguments that 1) the limits placed by statute on retirement benefits is a non-grievable issue in accordance with the EAB Administrative Rules, 2) that Miss. Code Ann. § 25-13-11(e) did not violate Moody's substantive due process rights, and 3) that the power to declare a statute unconstitutional lies with the judiciary, not an administrative agency. Thus, the decision of the EAB was unsupported by substantial evidence and beyond the scope of its powers and must, therefore, be reversed.

From that judgment, Moody appeals, and raises the following issues for consideration by this Court:

**A. Whether the EAB correctly denied DPS's motion to dismiss and correctly found that Moody's appeal regarding retirement benefits and payment for unused compensated leave were grievable issues?**

**B. Whether the EAB is a lower tribunal that may rule on the constitutionality of a state statute in its application to Moody, since the test of the constitutionality of a statute, in its natural progression, is determined in the judicial system?**

**C. Whether, in its application, Miss. Code Ann. § 25-13-11 (e) violated Moody's substantive due process rights, and the EAB was correct in its application of law to the facts and circumstances of this case?**

**D. Whether the circuit court of Hinds County erred in reversing the EAB decision absent a showing that the EAB decision was clearly erroneous, not based on substantial evidence, was arbitrary and capricious, beyond the DPS' scope of powers, or violated Moody's constitutional rights?**

### III. LEGAL ANALYSIS

**A. Whether the EAB correctly denied the DPS's motion to dismiss and correctly found that Moody's appeal regarding retirement benefits and payment for unused compensated leave were grievable issues?**

¶5. Moody first argues that the trial judge erred in finding that the calculation of retirement benefits is a non-

grievable issue. In support of this argument, Moody cites Miss. Code Ann. § 25-9-129, which established the EAB, and provides:

> The State Personnel Board shall appoint an employee appeals board, which shall consist of three (3) hearing officers, for the purpose of holding hearings, compiling evidence and rendering decisions on appeals of state agency action adversely affecting the employment status or compensation of any employee in the state service. . . .

¶6. Moody does not even refer to the Administrative Rules of the EAB. In so doing, Moody fails to acknowledge that the Legislature has vested the State Personnel Board [hereinafter SPB] with "the authority to promulgate rules and regulations to interpret and enforce . . . statutory imperatives" -- including the imperative contained in Miss. Code Ann. §  25-9-129. ***See Gill v. Mississippi Dep't of Wildlife Conservation***, 574 So. 2d 586, 592 (Miss. 1990) (citing Miss. Code Ann. § 25-9-115 (c) (Supp. 1990), which gives the SPB authority to "[a]dopt and amend policies, rules and regulations establishing and maintaining the State Personnel System").

¶7. Thus, the SPB's rules and regulations "' . . . enjoy legal validity via SPB's appropriate exercise of its statutory authority.'" ***Phillips v. Mississippi Veteran's Home Purchase Bd.***, 674 So. 2d 1240, 1242 (Miss. 1996) (quoting ***Gill***, 574 So. 2d at 592). Moreover, the applicable EAB Administrative Rules, clearly provide that the following (among others) are "non-grievable issues": the "establishment and revision of the compensation plan, and the policies, procedures, rules and regulations pertaining thereto", and "employee benefits." *See* EAB Administrative Rules, Appendix B (effective May, 1996). EAB Administrative Rule 2(C) provides that "[n]o person may appeal a non-grievable action."

¶8. Thus, Moody "did not have the right to appeal this particular matter to the EAB, [and] it is not necessary to address the merits of [the EAB's] decision." ***See Phillips***, 674 So. 2d at 1242. However, even if this Court were to consider the merits of the EAB's decision, Moody's remaining arguments would fail.

**B. Whether the EAB is a lower tribunal that may rule on the constitutionality of a state statute in its application to Moody, since the test of the constitutionality of a statute, in its natural progression, is determined in the judicial system?**

¶9. Moody claims that the trial judge erred by holding that the EAB is without authority to rule on the constitutionality of a statute. This Court has acknowledged that the remedial process for State employees by which an employee may appeal a final decision of the EAB to the Circuit Court is the employee's "exclusive remedy" in cases which fall under the EAB's statutory authority. ***See Hood v. Mississippi Dep't of Wildlife Conservation***, 571 So. 2d 263, 268 (Miss. 1990) (citing Miss. Code Ann. § 25-9-131 (3), which provides that this appeals procedure will "replace any existing statutory procedure"). ***See also*** Miss. Code Ann. § 25-9-129 (which gives the EAB authority to render "decisions on appeals of state agency action adversely affecting the employment status or compensation of any employee in the state service").

¶10. Indeed, the EAB has statutory authority under Miss. Code Ann. §  25-9-131 to ensure that the employee is "afforded all applicable safeguards of procedural due process"; administer oaths; issue subpoenas; and, compel the attendance of witnesses and the production of documents. This Court has acknowledged that the EAB is a "tribunal inferior" for purposes of Miss. Code Ann. § 11-51-95 (which provides for *certiorari* review by the circuit court). ***See Mississippi Dep't of Wildlife Conservation v.***

*Browning*, 578 So. 2d 667, 668-69 (Miss. 1991).

> The remedial process provided such employees necessarily vests the employee's department, agency or institution, and ultimately the EAB, with full authority to hear not only the merits *vel non* of any charge of inefficiency or other good cause, but also any other matter of fact or law the employee may assert affecting his employment.

> \* \* \*

> The more relaxed administrative appellate process before EAB is quite conducive to a full airing of the employee's constitutional claims. On judicial review the circuit court is specifically charged to consider whether EAB's action abridged "some . . . constitutional right of the employee." Miss. Code Ann.§ 25-9-132 (Supp. 1990).

*Hood*, 571 So. 2d at 268.

¶11. That is, the EAB has a "unique administrative charge to blend and pursue pragmatically and at once fact finding, legal interpretation and promotion of legislatively established public policy." *Gill*, 574 So. 2d at 593. However, although the EAB does serve an adjudicative role in interpreting the constitutionality of a State agency's implementation of certain statutes, there is no authority for allowing the EAB to strike down a statute.

¶12. "It is a fundamental rule that administrative agencies may exercise only those powers that are granted by statute." *Wright v. White*, 693 So. 2d 898, 901 (Miss. 1997) (holding that the EAB is without statutory authority to transfer a case to the circuit court). Therefore, any act by the EAB that is not authorized by statute is void. *See id.* at 902 (citing *Farrish Gravel Co. v. Mississippi State Highway Comm'n*, 458 So. 2d 1066, 1068 (Miss. 1984)).

> This Court has further held that "any power sought to be exercised [by an administrative agency] must be found within the four corners of the statute under which the agency proceeds." *Miss. Milk Comm'n v. Winn-Dixie Louisiana*, 235 So. 2d 684, 688 (Miss. 1970).

*Wright*, 693 So. 2d at 902. There is nothing within the four corners of the statute creating the EAB that allows it to declare a statute unconstitutional. Therefore, the EAB was without authority to do so. *See id.* Moody's argument to the contrary is without merit.

¶13. In addition, although the EAB is not authorized to strike down statutes, the circuit court, on *certiorari* review, is directed by statute to address constitutional issues. *See* Miss. Code Ann. § 25-9-132 (Supp. 1990). Therefore, even though the matter was non-grievable under the EAB's own rules, and, even though the EAB was without authority to strike down a statute, the circuit court, upon granting *certiorari*, properly disposed of the case.

**C. Whether, in its application, Miss. Code Ann. § 25-13-11 (e) violated Moody's substantive due process rights, and the EAB was correct in its application of law to the facts and circumstances of this case?**

**D. Whether the circuit court of Hinds County erred in reversing the EAB decision absent a**

**showing that the EAB decision was clearly erroneous, not based on substantial evidence, was arbitrary and capricious, beyond the DPS' scope of powers, or violated Moody's constitutional rights?**

¶14. Moody next argues that the trial judge erred by holding that Miss. Code Ann. § 25-13-11(e) is constitutional. Specifically, Moody argues that he has a vested property right in his accumulated leave, and that the 85% statutory limitation violates his right to substantive due process.

¶15. This Court has recently addressed a similar issue in ***State v. Jones***, No. 96-CA-00937-SCT, slip op. (Miss. July 2, 1998). In ***Jones***, public school teachers claimed that statutory amendments, which reduced the amount of lump-sum payments for accumulated leave upon retirement, violated their right to substantive due process. This Court held that "the right to lump-sum payment for accumulated leave upon retirement is not guaranteed in the federal or State Constitutions." ***Jones***, slip op. at 6.

¶16. In analyzing the teachers' substantive due process claims, the ***Jones*** court found as follows:

> . . . [B]ecause this case does not involve a suspect class or a fundamental right, "[u]nder both federal and state due process clauses, it must be shown that the [statute] was rationally or reasonably related to a proper legislative purpose." ***Wells***, 645 So.2d at 893; ***Mississippi High School Activities Ass'n, Inc. v. Coleman***, 631 So.2d 768, 774 (Miss.1994) ("When no fundamental right is infringed by state action, yet a substantive due process challenge is lodged, the statute (or rule) will be upheld so long as it has a reasonable relation to the State's legitimate purpose.").
>
> * * *
>
> This Court has also recognized the importance of allowing "governmental units to order their fiscal planning." ***Wells***, 645 So.2d at 894 (quoting ***Jetton v. Jacksonville Electric Authority***, 399 So.2d 396, 399 (Fla.Dist.Ct.App.1981)). "In sum, ... to allocate or conserve State fiscal resources-- has been held by this Court to be a legitimate legislative goal." ***Id.***

***Jones***, slip op. at 7-8.

¶17. Applying this reasoning, the 85% statutory limitation on retirement benefits in the case *sub judice* was rationally related to the legitimate legislative purpose of fiscal planning. Certainly, this Court recognizes that the members of the Mississippi Highway Patrol are vital to the service and protection of Mississippi citizens. However, the Legislature is the appropriate entity for balancing the importance of fiscal responsibility against the importance of properly rewarding retired officers for their years of service.

> The Legislature is the appropriate branch of the government to deal with this matter because it can conduct hearings to determine the extent of the need, the amount of funds required, and the numerous related factors involved. While the legislature can view the full spectrum of the problem, the courts, which do not have the means or facilities to adequately study the problem or provide the remedy, can only deal with the problem on a case by case basis.
>
> ***Mississippi Municipal Ass'n, Inc. v. State***, 390 So.2d 986, 988 (Miss.1980) (citations omitted). For these reasons, the . . . judgement of the trial court [declaring the statutory amendments unconstitutional] is reversed and rendered.

*Id.* at 9.

¶18. Given this authority, this Court finds that Moody's right to substantive due process was not violated by Miss. Code Ann. § 25-13-11 (e) -- the 1986 amendment which limited MHP employees' retirement benefits to 85% of their average compensation. *See generally Zucker v. United* States, 758 F. 2d 637, 638 (D.C. Cir. 1985) ("It is well settled that potential retirees have no protected property interest in any particular level of retirement benefits as they have no legitimate claim of entitlement to benefits which are subject to lawful change.").

¶19. For constitutional purposes, MHP employees "have earned what the Mississippi Legislature dictates they have earned. The Legislature is the entity charged with balancing the many competing philosophies with regard to the expenditure of State funds." *See Jones*, slip op. at 10. Therefore, Moody's argument to the contrary is without merit, and the trial court's judgment on this issue is affirmed.

## V. <u>CONCLUSION</u>

¶20. The trial judge properly reversed the decision of the EAB. That is, the trial judge correctly held that: (1) the statutory limitation on MHP retirement benefits is a non-grievable issue, pursuant to the EAB Administrative Rules; (2) the EAB is without authority to declare a statute unconstitutional; and, (3) Miss. Code Ann. § 25-13-11(e) does not violate Moody's substantive due process rights. Accordingly, the judgment of the trial judge is affirmed.

¶21. **JUDGMENT IS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. BANKS, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶22. I disagree with the majority's conclusion that Moody did not have a grievable issue under the rules of the Employee Appeals Board with regard to the statutory cap on his retirement benefits and payment for his accumulated leave time. These are two separate benefits for which Moody had contracted with the State of Mississippi. To say that he cannot now appeal the calculation of his retirement benefits deprives him of the opportunity to pursue a remedy for the deprivation of his substantive due process rights and the constitutional prohibition against the impairment of contractual obligations.

¶23. A showing that the State has deprived Moody of a protected interest in life, liberty or property is a prerequisite to any claims alleging denial of his rights to due process. *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986). To have a property interest in a benefit, a person must have more than an abstract need or desire for it; that person must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In Mississippi, there is no difference

between earned sick pay and earned vacation pay; both are earned and neither are compensation in lieu of wages. *Lanterman v. Roadway Express, Inc.*, 608 So. 2d 1340, 1349 (Miss. 1992).

¶24. Moody's entitlement to payment for accrued leave upon retirement in addition to his retirement benefits was a contractual right that could not be altered by the Legislature without offending the Due Process Clause of the Mississippi Constitution. He had a contractual relationship with the State of Mississippi, which was a property interest pursuant to the Due Process Clause. His reasonable expectation of receiving this contractual obligation is a sufficient allegation of a tangible interest to invoke protection against arbitrary and irrational government action. *See State v. Jones*, No. 96-CA-00937-SCT (Miss. July 2,1998)(McRae, J., dissenting).

¶25. There is no legitimate purpose for denying Moody and other highway patrol officers the right to the full benefits they have earned over the course of their employment by the State. The majority suggests that the 85% cap on retirement benefits imposed by the Legislature in 1986 does not violate due process because it is rationally related to the legitimate purpose of fiscal planning. This assertion rings hollow. Moody went to work for the State Highway Patrol in July, 1963 and worked for twenty-three years without any expectation of a cap on retirement benefits. Surely, the Legislature's fiscal planning abilities cannot be too seriously taxed by figuring the provision of benefits for a finite number of highway patrol officers hired prior to 1986, whose years of service accumulated until that time are easily calculable. Further, payment of officers' accumulated leave time should not have any effect on the Legislature's fiscal planning one way or another. Moody just as easily could have taken several weeks of leave before he retired. His full salary would have been owed him for that time and the State would not have received the benefit of his services in return.

¶26. State Highway Patrol officers put their lives on the line for the people of Mississippi every day. To deny those who have served this State bravely for more than thirty years, the full benefits to which they should be entitled on the grounds of the Legislature's need for fiscal planning is a travesty. There simply is no *legitimate* basis for denying Moody and other similarly situated Highway Patrol officers the full extent of benefits they have earned during their years of service to our State. Once again, just as was done to the teachers in *Jones*, the majority has allowed the Legislature to ignore the legitimate expectations of those who serve the State and to renege on the State's contractual agreements. Accordingly, I dissent.

**ROBERTS, J., JOINS THIS OPINION.**

1. Miss. Code Ann. § 25-13-11 deals with MHP retirement, and provides, in pertinent part, that

> [t]he annual amount of the retirement allowance shall consist of:
>
> (a) A member's annuity, which shall be the actuarial equivalent of the accumulated contributions of the member at the time of retirement, computed according to the actuarial table in use by the system.
>
> (b) An employer's annuity which, together with the member's annuity provided above, shall be equal to two and one-half percent (2- ½ %) of the average compensation, based on the four (4) highest consecutive years, for each year of membership service.
>
> (c) A prior service annuity equal to two and one-half percent (2- ½ %) of the average compensation, based on the four (4) highest consecutive years, for each year of prior service for which the member is allowed credit.

\* \* \*

(e) Upon retiring from service, a member shall be eligible to obtain retirement benefits, as computed above, for life, except that the aggregate amount of the employer's annuity and prior service annuity above described shall not exceed more than eighty-five percent (85%) of the average compensation regardless of the years of service.