821 So.2d 1226 (2002)
Freda M. GILBRETH, Appellant,
v.
GENESIS ELDERCARE and Liberty Mutual Group, Appellees.
No. 1D01-2684.
District Court of Appeal of Florida, First District.
July 26, 2002.
*1227 Susan W. Fox of Macfarlane Ferguson & McMullen, Tampa; H. Guy Smith of Smith, Feddeler, Smith & Miles, P.A., Lakeland, for Appellant.
Mark W. Ingram of Ingram & Ingram, Sarasota, for Appellees.
ERVIN, J.
In this workers' compensation appeal, the employee, Freda Gilbreth, complains that the judge of compensation claims (JCC) erred in calculating her average weekly wage (AWW) pursuant to the method set out in 440.14(1)(a), Florida Statutes (1997),[1] based solely upon the wages claimant earned in her primary employment the 13 weeks immediately preceding her industrial accident, thereby excluding the wages earned from her parttime employment, because she did not receive them during the 13-week period. Appellant contends that her AWW should have been calculated by combining the income from both occupations under section 440.14(1)(c), pertaining to seasonal employment, which permits computation using the 52-week period predating the injury. We agree, and reverse and remand.
During the 13 weeks before her August 24, 1998, injury, claimant worked between 45 and 50 hours per week for Genesis Eldercare as a licensed practical nurse, and her AWW in such capacity was $751.73. Claimant was also employed as an adjunct professor at Polk Community College from 1995 through 1999, generally teaching two or three courses per school year and earning between $4,350 (1995) and $10,350 (1999). During 1998, the college employed her from February 2 through March 6, April 13 through May 15, and September 14 through October 16. None of this employment fell within the 13-week period foregoing the industrial accident. Claimant's wages as an adjunct professor accounted for approximately 20 percent of her annual earnings, and if her part-time employment had been calculated pursuant to the seasonal employment method for the 52-week period prior to the injury, her AWW would have been substantially *1228 greater than that provided in section 440.14(1)(a).
In determining that the 13-week calculation was the only method available to claimant under section 440.14, the JCC made the following pertinent findings:
[T]he court has considered the Claimant's claim for inclusion of her earnings at Polk Community College in the calculation of her average weekly wage and compensation rate. Significantly, the Claimant had no earnings from this employment during the thirteen weeks prior to the industrial accident according to the payroll records from the college. While the Claimant has suggested that this was seasonal employment requiring her earnings to be considered over a fifty-two week period, the court finds that her employment as an instructor was not seasonal in nature. This court construes "seasonal" as relating to an agricultural or fishing season and the canning or packing industry related thereto. The [c]ourt determines that her primary employment was with Genesis Eldercare, and that use of the thirteen-week wage statement from that institution results in the best and most accurate determination of the Claimant's average weekly wage. Therefore, the court finds that the Claimant's average weekly wage should be based on the Claimant's earnings through her employment with Genesis Eldercare, that the average weekly wage was calculated correctly, and no adjustment is due.
The JCC's decision that the claimant's part-time employment as an adjunct professor could not be considered seasonal was based on two conclusions which depended primarily on an interpretation of section 440.14. They were (1) that the nature of the work itself precluded it from being seasonal, and (2) that none of the wages from such occupation occurred during the 13-week period preceding the industrial accident. In that the JCC's decision rests essentially on an interpretation of the law, our standard of review is de novo, which makes deferential review considerations that are customarily available in other types of appeals inapplicable.
A plain reading of section 440.14(1)(c), regarding the seasonal employment methodology, provides no support to the judge's interpretation. Subsection (1)(c) states:
If an employee is a seasonal worker and the foregoing method cannot be fairly applied in determining the average weekly wage, then the employee may use, instead of the 13 weeks immediately preceding the injury, the calendar year or the 52 weeks immediately preceding the injury. The employee will have the burden of proving that this method will be more reasonable and fairer than the method set forth in paragraphs (a) and (b)....
The above provisions clearly reveal that the only statutory conditions to the calculation of claimant's AWW under section 440.14(1)(c) are that she make a satisfactory showing that (1) she is a seasonal employee, and (2) the seasonal employment method is more reasonable and fairer than that provided in subsections (a) or (b), the 13-week and similar-employee methods, respectively. We find nothing in subsection (1)(c) remotely suggesting that claimant, once she has presented sufficient proof that she is in fact a seasonal employee, must have worked in any type of employment for substantially the whole of 13 weeks preceding the injury. Indeed, the method provided under subsection (1)(c) for calculating a seasonal employee's AWW, by using either the calendar year or the 52 weeks before the injury, strongly intimates that the 13-week procedure is irrelevant in such determination.
*1229 We are of the opinion that claimant has adequately satisfied both prongs of her statutory burden. Initially, we consider the judge's interpretation of "seasonal employment" far too restrictive. As was observed in Anstead v. Cox Broadcasting, 500 So.2d 197, 200 (Fla. 1st DCA 1986) (Ervin, J., concurring), "The dictionary's definition of the word `season' ... does not exclude a year-round employee, subjected to a variable income, from such entitlement. Among other things, season is defined as `a period of time [a slack season in business]....' Webster's New World Dictionary (Second College Ed.)." The definition furnished in Merriam-Webster's Collegiate Dictionary 1053 (10th ed.1998), states specifically, as applied to industries, the term "seasonal" means "affected or caused by seasonal need or availability."
This court's case law is generally consistent with the above definitions. For example, in Industrial Fiberglass Manufacturers & Employers Casualty Co. v. Davis, 460 So.2d 998 (Fla. 1st DCA 1984), we observed that the "seasonal worker" methodology appeared potentially appropriate for an over-the-road truck driver who normally experienced a slowdown in employment during the summer months. Similarly, a college instructor would ordinarily expect a slowdown in employment during the summer months, in that colleges then traditionally offer a reduced number of courses. As such, an instructor's employment should properly be regarded as seasonal in that it is "affected by seasonal need or availability." We therefore find no support for the JCC's narrow construction of the term.
Once the claimant established her status as a seasonal employee, the only remaining statutory impediment to having her AWW calculated by the seasonal employment method was the need for a satisfactory showing that such procedure was more reasonable and fairer than that provided in either subsection (1)(a), the 13-week method, or subsection (1)(b), the similar-employee procedure.[2] We consider the evidence to be abundantly clear that the seasonal method of employment was far more reasonable and fair in achieving a true approximation of claimant's wage loss than the 13-week procedure used by the JCC.
By excluding from the calculation of claimant's AWW a substantial portion of claimant's annual income derived from her wages earned as a college instructor, the JCC has failed to consider the probable loss of future income to claimant caused by the permanent, disabling injury.[3] As this court noted in Witzky v. West Coast Duplicating, 503 So.2d 1327, 1329 (Fla. 1st DCA 1987), an AWW calculation "is simply a method of establishing the value of an employee's lost ability to earn future wages during the period of disability attributable to the covered industrial accident." (Footnote omitted.) This explanation is simply a recognition of the often quoted statement by Professor Larson, in which he explains:
The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. This worker's disability reaches into the future, not the past; the loss as a result of injury must be thought of in terms of its impact on probable future *1230 earnings, perhaps for the rest of the worker's life.
5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 93.01(1)(g), at 93-17 (2002) (quoted favorably in Vegas v. Globe Sec., 627 So.2d 76, 82 (Fla. 1st DCA 1993) (en banc); Witzky, 503 So.2d at 1329 n. 1; Wal-Mart Stores v. Campbell, 714 So.2d 436, 439 (Fla. 1998) (Anstead, J., dissenting)).
In our judgment, it is neither fair nor reasonable to utilize an AWW in a case that omits claimant's concurrent, part-time earnings in their entirety, particularly in light of her work history, which shows that her employment as an adjunct professor had been an ongoing source of supplemental income to her both before and after the industrial accident. Moreover, we consider the complete exclusion of claimant's concurrent earnings from her AWW calculation to be contrary to the goal of fairly compensating an injured, disabled employee. The exclusion fails to recognize that her total loss of future wage-earning capacity is reduced not only by the 80 percent earned at Genesis Eldercare, but also by the 20 percent earned at Polk Community College, despite the fact that claimant's permanent, disabling condition now precludes her from performing any type of employment, full or part-time.
In holding that all concurrent earnings from covered employment, whether from a similar or dissimilar job, should be included in an AWW's calculation, the court explained in American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla.1972), that fairness in determining the appropriate compensation rate is the key consideration. The court observed that if an injury occurring on a part-time job disabled the employee from working in his or her full-time job, the worker's capacity as a wage earner is impaired beyond the limits of the part-time employment and compensation should be based on the combined wages. "The purpose of the Act is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the `whole man' not the capacity of the part-time or full-time worker that is involved." Id. at 194.
We are not unaware that Wal-Mart Stores v. Campbell, held that subsection (1)(a) is the appropriate method for calculating AWW in a case in which claimant's primary and part-time employment occurred during the 13-week period preceding the industrial accident, rather than that provided in subsection (1)(d), permitting the full-time weekly wages of an employee to be used if none of the previous statutory methods could be fairly applied. In our judgment, the facts in Wal-Mart are clearly distinguishable. First, no contention was made that the claimant's employment in either of his two occupations was seasonal. Second, and most important, all of claimant's wages in both employments occurred during the 13-week term preceding his injury. In reaching its decision, the court focused upon language in subsection (1)(a), requiring the application of such method where the employee has worked "for the same or another employer... during substantially the whole of 13 weeks immediately preceding the injury." The court considered that the above provision referred to both concurrent and successive employers during the 13-week period, thereby making inapplicable any other means of calculation furnished by section 440.14. As stated, claimant in the present case did not receive any of her part-time wages during the 13 weeks before her injury.
We therefore conclude that the JCC erred by employing subsection 440.14(1)(a) to calculate claimant's AWW, because that method omitted any consideration of her concurrent earnings, and as such it was *1231 neither fair nor reasonable. On remand, we direct the JCC to determine claimant's AWW from both employments, pursuant to the method set out in section 440.14(1)(c) as a result of her status as a seasonal employee.
REVERSED and REMANDED.
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Subsection (1)(a) provides:

If the injured employee has worked in the employment in which she or he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, her or his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the whole of 13 weeks" shall be deemed to mean and refer to a constructive period of 13 weeks as a whole, which shall be defined as a consecutive period of 91 days, and the term "during substantially the whole of 13 weeks" shall be deemed to mean during not less than 90 percent of the total customary full-time hours of employment within such period considered as a whole.
[2] Neither of the parties has argued that section 440.14(1)(b), the similar-employee method, has any applicability to this case.
[3] The claimant was administratively accepted by the employer/carrier as permanently, totally disabled.