78 So.3d 621 (2011)
MATRIX EMPLOYEE LEASING, INC. and First Commercial Claims Services, Appellants,
v.
Shawn HADLEY, Appellee.
No. 1D09-3360.
District Court of Appeal of Florida, First District.
November 29, 2011.
Opinion on Rehearing and Certification Denied January 6, 2012.
*622 David R. Drill of Kelley, Kronenberg, Gilmartin, Fichtel & Wander, Bamdas, Eskalyo & Dunbrack, P.A., Jacksonville, for Appellants.
Bill McCabe, Longwood, and Erika L. Brenneman, Tallahassee, for Appellee.

EN BANC
WETHERELL, J.
In this workers' compensation case, the Employer and Carrier (E/C) appeal a final order awarding Shawn Hadley (Claimant) permanent total disability (PTD) benefits. The E/C argue that the Judge of Compensation Claims (JCC) erred in awarding PTD benefits because Claimant has not yet reached maximum medical improvement (MMI) and he did not prove that he would be permanently and totally disabled after reaching MMI. We agree with the E/C and conclude this case is controlled by our decision in City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998), and its progeny. Upon consideration of this case en banc,[1] we decline to depart from that settled precedent. Accordingly, we reverse the order on appeal.

I. FACTUAL BACKGROUND
On January 18, 2007, Claimant injured his left knee and leg in a compensable *623 accident. Claimant underwent a number of surgeries on the leg as a result of complications from the initial surgery. Claimant's authorized treating physician, Dr. Farid Hakim, anticipates that Claimant will need additional surgeries, and he testified that Claimant is not yet at MMI. In May 2009, Claimant was placed on a no-work status pending the additional surgeries. Dr. Hakim was unable to provide a definitive opinion of Claimant's disability status once he reaches MMI, although he did testify that Claimant will "most probably" be able to go back to at least light-duty work at some point in the future and that Claimant will "probably" have only a 10% to 15% impairment rating after MMI.
The E/C paid Claimant 104 consecutive weeks of temporary total disability (TTD) benefits, until January 18, 2009, when entitlement to such benefits terminated by statute. At that point, the E/C began paying Claimant impairment benefits. Claimant thereafter filed a petition for benefits seeking an award of PTD benefits from January 18, 2009, and continuing, because he remains in a total disability status per Dr. Hakim. The E/C denied the claim, asserting that Claimant must first reach MMI to make the issue of PTD ripe for adjudication because the Workers' Compensation Law does not authorize the payment of pre-MMI "temporary PTD benefits."
In the order on appeal, the JCC acknowledged that "case law holds that there is no creature in the workers['] compensation law known as `temporary permanent total disability,'" but the JCC nevertheless awarded Claimant PTD benefits based on his view that "the Legislature did not intend to leave a claimant such as Mr. Hadley out in the cold with no basis for indemnity benefits when that worker is totally disabled for more than 104 weeks." The JCC explained his decision as follows:
The indefiniteness in the medical testimony as to when he may reach physical MMI, what final degree of permanent impairment he may suffer, and when or if he may return to gainful employment leave[s] too much to chance. The concrete evidence before me is that the claimant has a permanent disability and is incapable of engaging in employment at the present time. I choose to take the words "permanent" and "total" out of the context of the medical testimony and the legal requirements to find that the claimant is currently "permanent total" and is entitled to indemnity benefits in that classification, plus the supplemental benefits attendant thereto. While there may be a change in condition in the future, the claimant presently meets the requirements of the law to establish entitlement to permanent total disability indemnity benefits.
This timely appeal followed.

II. ANALYSIS
JCCs are bound by the decisions of this court interpreting the Workers' Compensation Law unless and until the decision is overruled by the Florida Supreme Court or this court recedes from the decision en banc. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992); Hoffman v. Jones, 280 So.2d 431, 433-34 (Fla.1973). Accordingly, a JCC lacks the authority to craft and apply a rule of law that directly contravenes this court's settled precedent. That, however, is precisely what the JCC did in this case by awarding PTD benefits based on Claimant's present disability status, rather than his status after reaching MMI as required by the statutes and case law discussed below. This was error.[2]
*624 Section 440.15, Florida Statutes, governs the payment of disability benefits to injured employees. Pertinent to this case, subsection (1) of the statute provides for the payment of PTD benefits to employees who have a "total disability adjudged to be permanent," and subsection (2) provides for the payment of TTD benefits to employees whose disability is "total in character but temporary in quality." § 440.15(1)-(2), Fla. Stat. (2006)[3] (emphasis added). PTD benefits are expressly limited to "claimants with catastrophic injuries or claimants who are incapable of engaging in employment." § 440.15(1)(b), Fla. Stat. ("In no other case may [PTD] be awarded."). TTD benefits are payable for no more than 104 weeks, after which the employee's permanent impairment[4] rating must be determined. See § 440.15(2)(a), Fla. Stat. ("Once the employee reaches the maximum number of weeks allowed, ... [TTD] benefits shall cease and the injured worker's permanent impairment shall be determined."); § 440.15(3)(d), Fla. Stat. ("After the employee has been certified by a doctor as having reached [MMI] or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating ...."). The permanent impairment rating is used to pay "impairment income benefits," commencing on "the day after the employee reaches [MMI] or after the expiration of temporary benefits, whichever occurs earlier," and continuing for a period determined by the employee's percentage of impairment. See § 440.15(3)(g), Fla. Stat.
The statutory scheme in section 440.15 works seamlessly when the injured employee reaches MMI prior to the expiration of the 104 weeks of temporary disability benefits. But where, as here, the employee is not at MMI at the expiration of the 104 weeks, there is the potential for a "gap" in disability benefits because TTD benefits cease by operation of law after 104 weeks and entitlement to PTD benefits is generally not ripe until the employee reaches MMI. We recognized this "gap" in Oswald and attempted to ameliorate its impact as much as possible within the confines of the applicable statutory language.
Oswald reversed a final order awarding PTD benefits to an employee who was not yet at MMI and who failed to prove that he would be totally disabled upon reaching MMI. See 710 So.2d at 96. We began the opinion by noting that "[t]he predicate for total disability benefits is catastrophic injury, which by definition entails permanent impairment." Id. Then, after recognizing the "venerable rule" that a claim for PTD benefits is premature if the injured employee has not yet reached MMI, id. at 97, we concluded that the 1994 amendments to chapter 440 "have given rise to a narrow but necessary exception" to this rule allowing an employee whose 104 weeks of temporary benefits are about to expire to establish *625 entitlement to PTD benefits by proving that he or she will be permanently and totally disabled after MMI. Id. at 97-98 (referring to statutory requirement now codified in section 440.15(3)(d) that the employee's permanent impairment rating be assigned six weeks prior to expiration of temporary benefits). We held that, under this exception, "to be eligible for [PTD] benefits, an employee whose temporary benefits have run outor are expected to do so imminentlymust be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be `existing after the date of [MMI].'" Id. at 98 (quoting definition of "permanent impairment" in section 440.02(19), Florida Statutes (1994 Supp.), which is now codified in section 440.02(22)).
Oswald squarely rejected the interpretation adopted by the JCC in this case and advocated by the dissent, i.e., that a claimant's entitlement to PTD benefits should be based on his or her condition at the end of the eligibility period for temporary benefits, rather than his or her condition at MMI. On this issue, Judge Padovano's concurring opinion in Oswald succinctly explained:
The remaining question is whether section 440.15(3)(a)4. [now section 440.15(3)(d)] requires an evaluation of the impairment at the time of the medical examination (during the six-week period before the temporary benefits expire), or at the time the employee will subsequently reach [MMI]. As the court explains, the answer to this question is that the doctor must evaluate the injured employee to determine the prospective level of impairment when the employee is at [MMI]. The opinion will be subjective, but no more so than other kinds of projections we ask medical experts to make. In any event, the evaluation must be made prospectively to preserve the distinction between temporary and permanent benefits.
If we were to construe section 440.15(3)(a)4. [now section 440.15(3)(d)] to mean that the doctor must determine the degree of impairment at the time of the medical examination, we would then subvert the two-year limit in section 440.15(2)(a) for the payment of temporary benefits. An injured worker may have a high impairment rating at the time of the examination, and yet have a low impairment rating subsequently, at the time of [MMI]. Arguably, one solution would be to award [PTD] benefits based on the current degree of impairment and then revisit the employee's eligibility under section 440.15(1)(d) when the employee reaches [MMI]. The weakness in this approach is that it treats what may be a temporary disability as permanent and extends the payment of benefits beyond the two-year limit.
Id. at 101 (Padovano, J., concurring). This reasoning is as logical and persuasive today as it was 13 years ago.
We have consistently applied the rule of law announced in Oswald over the past 13 years,[5] most recently in East v. CVS Pharmacy, *626 Inc., 51 So.3d 516 (Fla. 1st DCA 2010), and Crum v. Richmond, 46 So.3d 633 (Fla. 1st DCA 2010). In Crum, we reaffirmed that:
The test ... for PTD entitlement prior to the date of MMI is not, as the JCC appears to have concluded, whether a claimant is totally disabled upon the expiration of temporary disability benefit eligibility, and will have a permanent impairment after reaching MMI. The test is whether a claimant is totally disabled upon the expiration of temporary benefit eligibility, and will remain totally disabled after the date of MMI as that phrase is statutorily defined.
46 So.3d at 636. Accord East, 51 So.3d at 517 ("A claimant seeking PTD benefits before she reaches overall MMI must prove she has a present total disability and that said disability will exist after the date of MMI."). The Legislature has not amended the applicable statutes in response to Oswald and its progeny, and we see no reason to recede from this settled precedent at this point, notwithstanding the policy issues raised by the JCC and the dissent.
As we stated in Crum, we recognize that the applicable statutes "may create a gap in disability benefits for those injured workers who are totally disabled upon the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of MMI." 46 So.3d at 637 n. 3. We are not persuaded, however, that the statutes are susceptible to the interpretation advocated by the dissent[6] and we do not have the authority to rewrite the statutes to eliminate the potential "gap" in disability benefits; that remedy lies with the Legislature, not the courts. Id.; see also Thompson v. Fla. Indus. Comm'n, 224 So.2d 286, 287 (Fla. 1969) (denying petition for writ of certiorari and explaining carrier was justified in ceasing payment of TTD benefits after 350 weeks, even though claimant had not reached MMI and was still totally disabled: "This statute is clear and unambiguous in its language. .... The Florida Workmen's Compensation Act is inadequate in failing to provide for a situation such as this. However, the remedy lies with the Legislature and not with ... the Court.").
In this case, Claimant is not yet at MMI and he failed to establish that he will be permanently and totally disabled once he reaches MMI. Indeed, his treating physician testified that Claimant will likely be able to return to at least light-duty work after the required additional surgeries are *627 completed. Accordingly, based on Oswald and its progeny, Claimant failed to prove his entitlement to PTD benefits and the JCC should have denied the claim for such benefits.

III. CONCLUSION
In sum, for the reasons stated above, the JCC erred in awarding PTD benefits to Claimant. Accordingly, we reverse the final order.
REVERSED.
BENTON, C.J., WOLF, LEWIS, HAWKES, THOMAS, ROBERTS, ROWE, and RAY, JJ., concur.
PADOVANO, J., dissents in an opinion with which DAVIS, VAN NORTWICK, CLARK, MARSTILLER, and SWANSON, JJ., concur.
VAN NORTWICK, J., dissents in an opinion with which DAVIS, CLARK, and SWANSON, JJ., concur.
PADOVANO, J., dissenting.
I believe that we interpreted the Workers' Compensation Law incorrectly in Oswald and that we should now recede from the rule we adopted in that case. Nothing in the text of the applicable statutes suggests that there is a gap in which some totally disabled workers will be ineligible to apply for disability benefits. Moreover, the notion that there can be a period of time during which a disabled worker is not entitled to be compensated for his or her workplace injury is contrary to the most basic purpose of the Workers' Compensation Law. For these reasons, I respectfully dissent.
The claimant in the Oswald case was nearing the end of his eligibility for temporary benefits but he had not yet reached maximum medical improvement. We held that "an employee whose temporary benefits have run outor are expected to do so imminentlymust be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be existing after the date of maximum medical improvement." 710 So.2d at 98. Because the claimant was not able to show that he would be totally disabled after the point in the future when he would reach maximum medical improvement, we held that he was not yet entitled to assert his claim.
The court stated in Oswald that it was creating a "narrow but necessary exception" to the longstanding rule that permanent total disability benefits are not awardable before the claimant has reached maximum medical improvement. Id. at 96-98. The point of the exception was to avoid "a gap in benefits" for severely injured workers. Id. at 101 (Padovano, J., concurring). However, in crafting this exception, the court departed from the plain language of the statute.[7]
The statute places a fixed time limit on eligibility for temporary disability benefits but it does not suggest that a disabled worker who has reached that limit is no longer entitled to any further disability benefits. Nor does the statute state or imply that a disabled but still improving worker must prove that the disability will continue to exist at some unspecified point in the future when a doctor is willing to say that the worker will have reached maximum medical improvement. The "narrow exception" the court made with these assumptions is not supported by the text of the Workers' Compensation Law.
By the plain language of the applicable statutes, an injured worker who is still *628 totally disabled at the end of his or her eligibility for temporary disability benefits is deemed to be at maximum medical improvement as a matter of law, even if the worker may get well enough someday to return to work. In these circumstances, the claimant need not present medical proof that he or she has reached maximum medical improvement. The worker may immediately assert a claim for permanent total disability benefits, and the judge may award those benefits if the worker has proven that he or she is in fact totally disabled.
Section 440.15(2)(a) of the Workers' Compensation Law provides that an injured worker who is totally disabled is eligible for temporary total disability benefits for a period of time not to exceed 104 weeks. The disabled worker must be evaluated by a doctor six weeks before the expiration of the 104-week period of eligibility, and the doctor must assign an impairment rating. The evaluation is required by section 440.15(3)(d), which states,
After the employee has been certified by a doctor as having reached maximum medical improvement or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating, using the impairment schedule referred to in paragraph (b).

§ 440.15(3)(d), Fla. Stat. (2006) (emphasis added). The use of the word "shall" in this statute makes mandatory both the duty to evaluate the worker and the duty to assign an impairment rating. If the injured worker is receiving temporary total disability benefits but has not yet reached maximum medical improvement, the evaluation must be completed, and the impairment rating must be assigned.
Section 440.15(3)(d) employs the term "impairment rating," but this is merely a shorthand reference to a "permanent impairment rating." This section is contained within section 440.15(3), which deals exclusively with compensation for permanent impairments. Moreover, when this statute is read in conjunction with other statutes to which it relates, the term "impairment rating" can only mean a "permanent impairment rating." Section 440.15(2)(a), the subsection that sets the 104-week limit on eligibility for temporary total disability benefits, states in material part:
Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker's permanent impairment shall be determined.
§ 440.15(2)(a), Fla. Stat. (emphasis added).
The use of the term "permanent impairment" signifies that the disabled worker has attained maximum medical improvement. Section 440.02(22), Florida Statutes (2006) defines "permanent impairment" as "any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury" (emphasis added). It follows that the permanent impairment rating required by section 440.15(3)(d) is the equivalent of a medical finding that the disabled worker has reached maximum medical improvement.
This conclusion is supported by two more detailed provisions, subsections 440.15(3)(d)1. and 2., pertaining to the nature and content of the report the doctor is required to make six weeks before the expiration of temporary disability benefits. These subsections provide:

*629 1. The certifying doctor shall issue a written report to the employee and the carrier certifying that maximum medical improvement has been reached, stating the impairment rating to the body as a whole, and providing any other information required by the department by rule. The carrier shall establish an overall maximum medical improvement date and permanent impairment rating, based upon all such reports.
2. Within 14 days after the carrier's knowledge of each maximum medical improvement date and impairment rating to the body as a whole upon which the carrier is paying benefits, the carrier shall report such maximum medical improvement date and, when determined, the overall maximum medical improvement date and associated impairment rating to the department in a format as set forth in department rule. If the employee has not been certified as having reached maximum medical improvement before the expiration of 98 weeks after the date temporary disability benefits begin to accrue, the carrier shall notify the treating doctor of the requirements of this section.
§ 440.15(3)(d), Fla. Stat. (2006). In these two subsections of the statute, the Legislature is plainly equating a medical finding of maximum medical improvement with the status that exists by law if the employee has not reached maximum medical improvement six weeks before the expiration of temporary benefits.
When these statutes are read together, as they should be, it is clear that an injured worker who is still totally disabled at the end of the maximum period of eligibility for temporary total disability benefits is deemed to be at maximum medical improvement, regardless of any potential for improvement. The doctor is required by section 440.15(3)(d) to assess and certify the injured worker's "permanent impairment," a condition that can have but one meaning under section 440.03(22): a condition existing "after the date of maximum medical improvement." It follows that the permanent impairment rating that must be given at that time is the legal equivalent of a medical finding that the worker has reached maximum medical improvement.
We need not apply canons of statutory interpretation to arrive at this conclusion. All that is required is basic deductive reasoning. If a worker must get a permanent impairment rating before the expiration of temporary benefits, and if a permanent impairment rating can only exist after the worker has reached maximum medical improvement, there can be no other conclusion to draw but that the rating is equivalent to a finding that the worker has achieved maximum medical improvement. We could avoid this conclusion only if we were to assume that the Legislature meant to create a form of statutory maximum medical improvement for impairment benefits while retaining the requirement of medical evidence for the purpose of obtaining disability benefits. However, we would have to read a great deal into the statute to make a distinction such as this.
A close reading of the briefs in this case reveals that the parties do not dispute the fact that maximum medical improvement can exist as a matter of law upon the expiration of temporary disability benefits. Workers' compensation lawyers and judges commonly refer to this status as "statutory MMI." More specifically, the dispute in this case focuses on the question of whether a claimant's having reached statutory MMI is enough to make a claim for permanent total disability ripe for adjudication. The employer contends that it is not. In the initial brief filed on behalf of the employer, counsel argues that an injured worker must present medical evidence *630 that he or she has reached maximum medical improvement, a concept he refers to as "physical MMI."
The employer's argument on this point must fail, because there is nothing in the Workers' Compensation Law that distinguishes between "statutory MMI" and "physical MMI." Neither phrase is used in the statute. Although the concept of statutory MMI advanced by the claimant arises as a matter of law, whereas the concept of "physical MMI" advanced by the employer arises from the evidence, we have no reason to conclude that the effect is any different. Nothing in the Workers' Compensation Law suggests that, if a worker is deemed to be at maximum medical improvement based on the operation of the disability and impairment statutes, the status of that worker is somehow different from that of a worker who can prove by evidence that he or she is at maximum medical improvement. In both situations, the claimant is eligible to file a claim for permanent total disability benefits.
This interpretation of the Workers' Compensation Law does not blur the distinction between temporary and permanent disability benefits, as the majority has concluded. It is true that the Legislature placed a fixed time limit on the right to recover temporary disability benefits, but the purpose of this time limit was not to create a gap in which a totally disabled but still improving worker will be uncompensated. To the contrary, it is clear from the overall statutory scheme that the time limit was designed as a deadline, to force the parties to make a relatively prompt decision about the need for permanent total disability benefits.[8]
The conclusion that disability benefits are available throughout the course of a worker's disability is not only supported by the text of the applicable statutes, it is also consistent with the intent of the Legislature as expressed in the Workers' Compensation Law. Section 440.015, Florida Statutes (2006) states, "It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker." We can assume from this statement that the Legislature meant to require the continuous payment of disability benefits for an injured worker who continues to be disabled and that the 104-week limit on temporary disability benefits does not effectively terminate the injured worker's right to just compensation.
In contrast, the majority's interpretation would create an arbitrary deadline that would effectively deny an injured worker just compensation. If the majority is correct, there could be a gap for an indefinite period of time, during which an injured worker is not compensated at all, even though there is no dispute that the worker is totally disabled. A disabled worker who has exhausted the 104 weeks of temporary benefits but who has still not fully recovered from the workplace injury might have to wait months or perhaps years before disability benefits would resume, even though the employee remains totally disabled all the while. By accepting this result, the majority has effectively concluded that a law designed to provide compensation to injured workers actually denies compensation to some injured workers. In effect, the majority has decided that the law does not provide benefits, much less the "prompt delivery of *631 benefits," to injured workers like the claimant in this case.
The interpretation advanced by the majority would also promote a disparity in the way that disabled workers are treated. And the workers who are the most likely to be caught in the gap that would exist under the majority's interpretation are those who have been seriously injured. A disabled worker who reaches maximum medical improvement relatively quickly is fully compensated. But a disabled worker who is told that he or she may be well enough to return to work someday may have no compensation at all beyond the initial 104-week period. I do not think that the Legislature intended to create such a disparity. It is reasonable to conclude that the Legislature meant to ensure the "prompt delivery of benefits" to all workers who are injured on the job, not just some of them. See, e.g., Gauthier v. Fla. Int'l Univ., 38 So.3d 221, 224 (Fla. 1st DCA 2010).
The conclusion that a disabled worker is entitled to receive disability benefits continuously throughout the course of his or her disability is consistent not only with the stated intent of the law but also with the overall statutory scheme. Section 440.15(1)(d) enables an employer to discontinue the payment of disability benefits to a worker who has regained earning capacity through rehabilitation. Thus, the status of maximum medical improvement is not truly permanent. When an employee is deemed to be at maximum medical improvement by operation of law, the employer is not stuck with that determination forever. The worker's status and eligibility for benefits can change with the circumstances.
On the other hand, an interpretation that would create a potential gap in disability benefits could result in an uncorrectable error. As an illustration, we need only consider the situation that will exist in the present case if it turns out that the surgeon was overly optimistic about the claimant's prospect of recovery. If there is no change in the claimant's medical condition by the time the surgeon is willing to say that the claimant has reached maximum medical improvement, the logical inference would be that the claimant was, in fact, at maximum medical improvement much earlier. Yet there is nothing in the law that would enable the claimant to recover the disability benefits he should have been receiving in the meantime. It is reasonable to conclude that, if the Legislature had intended to create a gap in the payment of disability benefits, it would have at least provided a remedy for the recovery of lost benefits if it could be shown later that the claimant was actually at maximum medical improvement all along and should have been receiving those benefits.
The majority has pointed out that the Oswald decision has been cited in this court a number of times. That is true, but these cases do not serve to strengthen the precedent. If anything, they reveal that the rule in Oswald has not worked out as intended. It is clear now that the exception the court was attempting to create to ensure the continuous flow of disability benefits for those who are truly disabled is very rarely applied. Instead, the rule in Oswald has been used almost exclusively as authority to deny benefits. The Workers' Compensation Law was designed to provide injured workers just compensation for their injuries at reasonable cost to their employers. See § 440.015, Fla. Stat. Yet, by this court's interpretation of the law in Oswald, it has become an impediment to the recovery of just compensation for a distinct class of severely injured workers.
*632 We are not here to make policy, and I certainly do not suggest that we should interpret a statute based on the wisdom or fairness of the outcome. But if we have repeatedly interpreted a statute in such a way as to produce a result that is patently unjust, it seems to me that we should study the statute again to be sure that we are reading it correctly. Since Oswald, the court has essentially held that an employer has authority of the Workers' Compensation Law to deny disability benefits to an injured worker who has exhausted his or her temporary benefits so long as the employer can prove that the worker may improve enough to return to work at some point in the future. With due respect for my colleagues, I do not believe we are required to reach such an unjust result in order to protect the integrity of the time limit on eligibility for temporary benefits.
The majority cites Thompson v. Florida Industrial Commission, 224 So.2d 286 (Fla.1969) in support of its holding, but that decision does not compel adherence to Oswald. The 1961 statute the court was interpreting in Thompson had a limit of 350 weeks on temporary total disability benefits and it had no provision for statutory maximum medical improvement. When the Legislature reduced eligibility for temporary total disability benefits from five years to two years, it put in place for the first time a provision for statutory maximum medical improvement. If the statute the court was interpreting in Thompson had a provision like this for statutory maximum medical improvement, the stated obstacle to the recovery of permanent disability benefits would have been removed.
For these reasons, I would recede from our decision in Oswald and subsequent cases holding that there is a gap in benefits and I would affirm the order awarding the claimant permanent total disability benefits. The claimant reached maximum medical improvement as a matter of law, and the evidence demonstrates that he is totally and permanently disabled.
VAN NORTWICK, J., dissenting.
I join in Judge Padovano's dissent because I believe that it more correctly interprets the applicable provisions of the Workers' Compensation Act. I write separately to express my opinion that both the approach adopted in Oswald (and reaffirmed by the majority opinion) and the approach expressed in the dissent are judicial "patches" crafted to attempt to avoid a material "gap" in disability benefits for injured workers who remain totally disabled on the expiration of temporary disability benefits. In my view, our concern with this potential "gap" is not simply a humanitarian concern for particular claimants, but is based on our interest in avoiding a potential constitutional issue. The problematic nature of the cutoff of these benefits has long been recognized by Florida courts. For example, as noted by the majority, in Thompson v. Florida Industrial Commission, 224 So.2d 286, 287 (Fla. 1969), the court recognized that in ceasing payment of temporary total disability benefits after 350 weeks even though claimant was still totally disabled, "[t]he Florida Workmen's Compensation Law is inadequate in failing to provide for a situation such as this." Under the current statute, temporary total disability benefits have been reduced to 104 weeks, section 440.15(2)(a), Florida Statutes (2006), 246 weeks less than the 350 weeks of benefits in Thompson.
Under article I, section 21 of the Declaration of Rights in the Constitution of the State of Florida: "The courts shall be open to every person for redress of any injury...." As Judge Altenbernd has explained, *633 one function of this provision "is to protect the substantive rights of the people through judicial checks on the power of the legislature." Shova v. Eller, 606 So.2d 400, 409 (Fla. 2d DCA 1992) (Altenbernd, J., dissenting), quashed, Eller v. Shova, 630 So.2d 537 (Fla.1993).[9] The Florida Supreme Court has set forth the limits imposed on the legislature by article I, section 21:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. s. 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Kluger v. White, 281 So.2d 1, 4 (Fla.1973). In analyzing whether the right of access to the courts has been abolished by a particular change in the Workers' Compensation Law, under the test in Kluger Florida courts must determine (1) whether the amendment to the act abolished a preexisting right of access; (2) if so, whether a reasonable alternative exists to protect the preexisting right of access; and (3) if no such reasonable alternative exists, whether an overwhelming public necessity exists for the amendment to the act. Eller, 630 So.2d at 542.
Florida courts have recognized that the Workers' Compensation Law serves as a reasonable alternative to tort law. See, e.g., Martinez v. Scanlan, 582 So.2d 1167, 1171-72 (Fla.1991) (stating that "the workers' compensation law remains a reasonable alternative to tort litigation [because] [i]t continues to provide injured workers with full medical care and wage-loss payments for total or partial disability regardless of fault and without the delay and uncertainty of tort litigation"). Generally, unless the amended statute in question has effectively eliminated a claimant's cause of action, the amendment does not violate article I, section 21. See John v. GDG Servs., Inc., 424 So.2d 114, 116 (Fla. 1st DCA 1982) (upholding against an access to courts challenge an amendment to section 440.15(3)(b), concerning permanent impairment benefits, this court reasoned: "Although we note the benefits under the new wage-loss provisions may result in reduced benefits, the right to recover for industrial injuries has not been so reduced as to be effectively eliminated.") (emphasis added), decision approved, 440 So.2d 1286 (Fla. 1983). Judge Webster has recently warned about potential constitutional concerns in the context of the apportionment of benefits under section 440.15(5)(b):
If, as I think will likely be the case, a significant number of injured workers receive significantly reduced benefits because of section 440.15(5)(b), the courts might well conclude that because the right to benefits has become largely illusory, Florida's Workers' Compensation Law is no longer a reasonable alternative to common-law remedies and that, accordingly, workers have been denied meaningful access to courts in violation of article I, section 21, of our constitution.
Staffmark v. Merrell, 43 So.3d 792, 798 (Fla. 1st DCA 2010) (Webster, J., concurring) *634 (citations omitted). Similarly, in the case of a totally disabled claimant whose rights to temporary disability benefits has expired, but who is prohibited from receiving permanent disability benefits, the elimination of disability benefits may reach a point where the claimant's cause of action has been effectively eliminated. In such a case, the courts might well find that the benefits under the Workers' Compensation Law are no longer a reasonable alternative to a tort remedy and that, as a result, workers have been denied access to courts.
For the reasons explained by Judge Padovano, the Oswald patch leaves many totally disabled claimants stuck in this gap without the benefits. I urge the legislature to address this inadequacy under the Workers' Compensation Law.
BY ORDER OF THE COURT.
Appellee's Motion for Rehearing and Motion for Certification of Question as One of Great Public Importance, filed December 9, 2011, is denied.
BENTON, C.J., and WOLF, LEWIS, THOMAS, ROBERTS, WETHERELL, ROWE, RAY, and SWANSON, JJ., concur.
PADOVANO, DAVIS, VAN NORTWICK, CLARK, and MARSTILLER, JJ., concur in denial of rehearing and dissent from denial of certification of a question of great public importance.
DAVIS, VAN NORTWICK, and CLARK, JJ., join in the dissenting opinion of PADOVANO, J.
PADOVANO, J., dissenting.
After the release of the en banc opinions in this case, the claimant filed a timely motion for certification under rule 9.330(a) of the Florida Rules of Appellate Procedure and Article V, section 3(b)(4) of the Florida Constitution. The employer did not oppose the motion. Although I think it is quite clear from the opinions on the merits of the case that the court has passed upon a question of great public importance, the court has denied the motion for certification. I take issue with this ruling. With due respect for my colleagues in the majority, the motion should have been granted.
There can be no doubt that the legal issue decided by the court was an important issue. It is apparent from the decision itself that the controversy relating to the proper interpretation of the applicable statutes was important enough to require the attention of all fifteen judges of this court. Moreover, the case was considered by this court en banc, because a substantial number of judges believed that the court had committed a serious error that effectively foreclosed the possibility of just compensation for many injured workers.
Nor can there be any doubt that the issue is one of public importance. The en banc decision affects not only the rights of the immediate parties, but also the rights of all similarly situated workers. As a consequence of the court's prior decision, now endorsed by the en banc decision in this case, hundreds, perhaps thousands of disabled workers will be denied compensation for their workplace injuries. If this court has made a mistakeand even the majority must admit that is possiblethe court should welcome the prospect of a correction. I do not know whether the supreme court would agree with the majority or the dissent on the merits of the case, but I do know that the decision this court has made is one that will have an impact on a large number of workers in Florida. It is precisely the kind of issue that should be certified to the supreme *635 court for discretionary review under Article V, section 3(b).
Perhaps this court would have been justified in denying certification of the legal question presented in this case if the court had provided a definitive answer to the question. But that is not the case. If nothing else, the sharp division between the judges illustrates that there might be more than one way to interpret the applicable statutes. The majority chose an interpretation that opens the Florida Workers' Compensation Law to a serious constitutional challenge. Because the decision will no doubt spark a new wave of litigation, I do not think we can say that the court has resolved the underlying legal' question. To the contrary, the decision marks the beginning of a more specific discussion about the adequacy of the statutory remedies as defined by the court. In my view, the uncertainty that exists now with respect to the rights of disabled workers creates a compelling need for supreme court review.
I recognize that the district courts of appeal are courts of final appellate jurisdiction and that subsequent review by the Florida Supreme Court is available only in limited circumstances. See Ansin v. Thurston, 101 So.2d 808 (Fla.1958). . However, there are some issues that require the attention of the supreme court and I think that the issue raised here is plainly one of them. Even if there were some doubt about the importance of the issue or the impact it will have on the public, I fail to see the harm in granting the motion for certification.
All that certification would do is give the supreme court an opportunity to decide whether it should review the case. Because this kind of review is discretionary, the supreme court could simply decline to hear the case if it believed that the issue in this case was not important enough. However, by denying the motion for certification, this court has made that decision for the supreme court. The effect of the order denying the motion for certification is to foreclose the possibility of further review in this case.
This court should be particularly open to the possibility of certifying questions of great public importance in workers' compensation cases, because there are very few other circumstances in which discretionary review is available in these cases. By a special grant of jurisdiction, the First District Court of Appeal hears all of the workers' compensation appeals in Florida, regardless of the location of the lower tribunal. Consequently, there will never be a workers' compensation appeal in which this court could certify conflict, and there will be very few cases in which the supreme court could review a decision of this court on the ground of express and direct conflict. Given the extremely limited opportunity for discretionary review, this court should be especially vigilant about the need to certify important workers' compensation issues to the supreme court. We should fulfill our gatekeeping role by eliminating those issues that fail to meet the test of public importance, not by foreclosing review of our own decisions on important questions.
For these reasons, I would grant the motion for certification and give the Florida Supreme Court an opportunity to decide whether it should review the case.
NOTES
[1] We considered this case en banc pursuant to section 6.3 of the court's Internal Operating Procedures which requires an en banc vote "[w]hen the majority of a panel decides to recede from a prior opinion of this court."
[2] The issue presented in this appeal is one of statutory interpretation and the application of the proper rule of law. Thus, our standard of review is de novo. See, e.g., Lombardi v. S. Wine & Spirits, 890 So.2d 1128, 1129 (Fla. 1st DCA 2004); Gilbreth v. Genesis Eldercare, 821 So.2d 1226, 1228 (Fla. 1st DCA 2002).
[3] All statutory references are to the 2006 version of the Workers' Compensation Law in effect at the time of Claimant's accident. See Southern Bakeries v. Cooper, 659 So.2d 339, 340 (Fla. 1st DCA 1995).
[4] "Permanent impairment" is defined as "any anatomic or functional abnormality or loss determined as a percentage of the body as whole, existing after the date of maximum medical improvement, which results from an injury." § 440.02(22), Fla. Stat. (emphasis added).
[5] See, e.g., Fla. Transp.1982, Inc. v. Quintana, 1 So.3d 388 (Fla.1st DCA 2009); Olmo v. Rehabcare Starmed/SRS, 930 So.2d at 789 (Fla. 1st DCA 2006); Rivendell of Ft. Walton v. Petway, 833 So.2d 292 (Fla. 1st DCA 2002); Metro. Title & Guar. Co. v. Muniz, 806 So.2d 637 (Fla. 1st DCA 2002); McDevitt St. Bovis v. Rogers, 770 So.2d 180 (Fla. 1st DCA 2000); Chan's Surfside Saloon v. Provost, 764 So.2d 700 (Fla. 1st DCA 2000); Daws Mfg. Co. v. Ostoyic, 756 So.2d 175 (Fla. 1st DCA 2000); Office Depot, Inc. v. Sweikata, 737 So.2d 1189 (Fla. 1st DCA 1999); Perdue Farms v. Sheets, 718 So.2d 361 (Fla. 1st DCA 1998); Advanced Employment Concepts v. Resmondo, 718 So.2d 215 (Fla. 1st DCA 1998); Interim Pers. v. Hollis, 715 So.2d 355 (Fla. 1st DCA 1998).
[6] The statutory interpretation advocated by the dissent would eliminate the "gap" by equating the expiration of the eligibility for temporary benefits with the date of MMI, as that phrase is used in the definition of "permanent impairment." The main problem with this interpretation is that "date of maximum medical improvement" is statutorily-defined as the date after which the employee is not reasonably anticipated to have further medical recovery or improvement from the injury, see § 440.02(10), Fla. Stat., whereas the date temporary benefits cease by operation of law has nothing to do with the employee's ultimate medical condition or prognosis. Additionally, the dissent's interpretation would have the effect of authorizing a class of pre-MMI disability benefitswhether characterized as "temporary PTD" or "continuing/extended TTD"that are not authorized by statute and that have been previously disavowed by this court. See Quintana, 1 So.3d at 390-91 (reversing pre-MMI award of "`temporary' PTD benefits" and distinguishing cases authorizing "temporary" award of PTD benefits based on the claimant's post-MMI status); and cf. Oswald, 710 So.2d at 101 (Padovano, J., concurring) (explaining that pre-MMI award of PTD benefits based on the claimant's condition at the expiration of the 2-year period for temporary benefits would subvert the statutory limit on temporary benefits).
[7] Having served on the panel in Oswald, unlike any of the judges who have joined in this dissent, I alone accept responsibility for the error.
[8] The two-year limit on temporary disability benefits was enacted as a part of the Workers' Compensation Law in 1993. See § 440.15(2)(a), Fla. Stat. (Supp. 1994). Before that, the time limit on temporary disability benefits was five years. See § 440.15(2)(a), Fla. Stat. (1993).
[9] In Eller, the Florida Supreme Court expressly agreed with Judge Altenbernd's dissent. Eller v. Shova, 630 So.2d 537, 542 (Fla.1993).