PER CURIAM.
In this workers’ compensation appeal, the Judge of Compensation Claims (JCC) rejected the presumptively correct opinion of the expert medical examiner (EMA) and determined instead that the major contributing cause (MCC) of Claimant’s need for the recommended shoulder replacement surgery was the workplace injury. We reverse because the JCC failed to articulate clear and convincing evidence contrary to the EMA’s opinion.
I.
Claimant was employed as a gas tech, which he described.- as someone who worked on and installed gas appliances. Claimant testified that on December 5, 2013,' he was using a small ladder to get *1220 into the bed of his pickup truck. While Claimant had one foot on the .tailgate and one foot on the ladder, .the ladder slipped and Claimant fell down, landing on his right-side. The accident and injury to the right shoulder was initially accepted as compensable by the Employer/Carrier (E/C) and authorized medical treatment was provided by Dr. Patterson. Following Dr. Patterson’s exam in January 2014, the E/C denied entitlement to any further treatment on grounds the treatment was not related to Claimant’s employment; rather, the need for the treatment was Claimant’s pre-existing shoulder pathology which included osteoarthritis and rotator cuff arthropathy.'
By way of background, Claimant testified, as detailed further in the medical reports, that' he had undergone surgery for a right rotator cuff repair' in 1999 or 2000, and two surgeries on the left rotator .cuff— the first in approximately 2002 and the second in approximately 2005. Claimant testified at the hearing that he was - not receiving medical treatment just prior to the date of the accident and.was not taking any prescription medication. Claimant did report that he had pain when he had to work in certain positions and that after a heavy-lifting day he would take Advil or Tylenol for muscle pain and achy joints; nevertheless, he testified he was able to do all of his duties before the date of the accident.
In his deposition, Claimant testified that he had some difficulties with both shoulders from the time he Started working for the Employer in 2009 until the date of the accident, which he described as pain and movement (range -of motion). He explained that. the symptoms were, present from the time he woke up until he went to bed, depending on his level of activity. He further testified that if he had'pain, adjustments would be made to his work schedule.
In response to the E/C’s denial of further treatment, Claimant underwent an examination with his designated medical expert, Dr. Fiore, who opined that the MCC for the need of the recommended surgery at issue was the workplace injury, as the doctor was of the opinion that Claimant sustained an acute injury to the right rota-tor cuff when he fell. Based on the disagreement between Drs. Patterson and Fiore, the E/C requested appointment of an EMA. The JCC granted this motion and appointed Dr. Greene as EMA. Dr. Greene opined that the pre-existing conditions were the MCC of the need for the surgery.
II.
In. her findings, the JCC noted that Claimant “testified that after a heavy work day he would have achiness or pain in his right shoulder and would take over the counter medicines such as ibuprofen.” Nevertheless, the JCC found that the preexisting conditions did not require' any treatment prior to the compensable accident. The JCC found that all of the physicians agreed that the rotator cuff repair and pre-existing arthritis were the cause of the need for the shoulder replacement surgery. The JCC also found that if the compensable injury had not occurred, Claimant’s condition may or may not have progressed to the point where he required this surgery. Thus, she concluded, the compensable accident caused the underlying condition to become symptomatic, and it is this symptomatology in combination with the pre-existing condition that has led to the recommendation for surgery.
In her analysis, the JCC explained that when a claimant has a pre-existing condition-, the inquiry becomes whether the pre-. existing condition independently required *1221 treatment either before or after the com-pensable injury, citing City of Fort Pierce v. Spence, 155 So.3d 1197 (Fla. 1st DCA 2014). Even though the EMA testified that the MCC of the need for treatment was the pre-existing condition, the JCC explained that it is not the use of certain “magic words” that is determinative of the issue; rather, it is the substance of the evidence, relying on Trejo-Perez v. Arry’s Roofing, 141 So.3d 220 (Fla. 1st DCA 2014). Here, the JCC concluded, the evidence established that Claimant may have remained asymptomatic and may not have required the shoulder replacement surgery in the absence of the compensable injury. Further, the pre-existing condition had not independently required treatment. Thus, the JCC reasoned, the MCC of Claimant’s current disability and need for treatment was the compensable injury.
m.
The JCC’s factual findings will be upheld if any view of the evidence and its permissible inferences supports them. See Ullman v. City of Tampa Parks Dep’t, 625 So.2d 868, 873 (Fla. 1st DCA 1993). The JCC’s legal conclusions involved questions of law subject to de novo review. See Gilbreth v. Genesis Eldercare, 821 So.2d 1226 (Fla. 1st DCA 2002). Paragraph 440.13(9)(c), Florida Statutes (2013), provides that an EMA is appointed when “there is a disagreement in the opinion of the health care providers.” Further, “[t]he opinion of the [EMA] is presumed to be correct unless there is clear and convincing evidence to the-contrary as determined by the [JCC].” Id. In order to reject the opinion of the EMA, as the JCC did here, a JCC is required to find and articulate the reasons for rejecting the EMA’s opinion. See Mobile Med. Indus. v. Quinn, 985 So.2d 33, 36 (Fla. 1st DCA 2008). It is not enough for the JCC to find “that the opinions of the authorized treating physician were ‘the most logical, and comport most closely with reason,’” the JCC must “articulate how or why [she] reached this conclusion.” Travelers Ins. v. Armstrong, 118 So.3d 865, 866 (Fla. 1st DCA 2013).
When a claimant has a pre-existing condition not related to an earlier workplace injury, it is appropriate to consider whether the workplace injury at issue is the MCC of the need for the treatment. See § 440.09(1)(b), Fla. Stat. (2013) (“If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation dr benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to-all other'causes combined and thereafter remains the [MCC] of the disability or need for treatment. [MCC] must be demonstrated by medical evidence only”). See also Pizza Hut v. Proctor, 955 So.2d 637, 638 (Fla. 1st DCA 2007) (“[Section 440.09(l)(b) applies when a claimant’s need for treatment or benefits is caused by the impact of an industrial accident combining with a preexisting' injury or condition which is unrelated to an industrial accident.”).
The case relied upon' by the JCC, Spence, 155 So.3d at 1198, does indeed speak to a MCC analysis based on the level of treatment required by the preexisting condition as one way to address the MCC question — after all, if a pre-exist-ing condition is not-causing the need for any medical treatment, it can be difficult to describe the condition as a cause at all, much less the major contributing'cause. The JCC’s approach — and error — was to focus solely on whether Claimant was, or *1222 recently had been, undergoing physician-provided medical treatment for his shoulder to the exclusion of other evidence that Claimant was in fact experiencing shoulder pain before the workplace accident and the objective medical evidence of pre-existing shoulder conditions contributing to, if not causing, his symptoms.
The medical evidence demonstrated that Claimant had a pre-existing condition described by Dr. Greene in his report to include “severe degenerative arthritis at the glenohumeral [shoulder] joint, [and] joint effusion.” When asked during his deposition what was causing Claimant’s increased complaints, he opined that “one source of pain is the degenerative arthritis in his shoulder and an unquantifiable amount of inflammation associated with that.”
The pre-injury symptoms Claimant experienced may not have risen to a sufficient level to lead him to seek active medical treatment from a physician, but they do refute the JCC’s suggestion that Claimant was “asymptomatic,” as demonstrated by Claimant’s testimony that he was taking . over-the-counter pain .relievers for shoulder pain prior to the accident. Significantly, the JCC failed to acknowledge Dr. Greene’s testimony that there was “a high probability” that Claimant would come to surgery in the absence of an intervening accident when the JCC concluded that “[t]he evidence establishes that claimant may have remained asymptomatic and may not have required the shoulder replacement surgery in the absence of the compensable injury.”
Despite detailed and extensive questioning by Claimant’s attorney, Dr. Greene remained of the opinion that the “major cause of [Claimant’s] change in condition is, in fact, the underlying degenerative arthritis that predates the accident.” The doctor also opined that the major cause of Claimant’s change in function was the chronic rotator cuff issues and the chronic degeneration in the shoulder, i.e., the pathology. Even though the Claimant’s 2013 fall may be the most recent aggravator of his shoulder problems, the JCC did not support her conclusion that the fall constituted the MCC with clear and convincing medical evidence sufficient to disregard Dr. Greene’s presumptively correct opinion that the pre-existing shoulder condition was the MCC.
IV.
We reject without further comment Claimant’s tipsy coachman argument. Based on the forgoing, the order of the JCC is REVERSED, and the matter REMANDED for entry of an order denying Claimant’s entitlement to the requested shoulder surgery.
RAY, OSTERHAUS, and WINOKUR, JJ., concur.